### 43545. LOBDELL v. THE STATE.
(353 SE2d 799)

BELL, Justice.

Kevin Lobdell was tried and convicted of the malice murder of Roy Collins.[1] He appeals, and we affirm. The evidence, viewed most favorably to the state, is as follows:

On March 31, 1982, Lobdell and a friend named Jerry Mask left Atlanta in a pickup truck. Lobdell fell asleep, and was awakened by Mask in a freeway rest area. Mask told him, "Follow me. I'm going to be with this other guy. And I told him we ran out of gas and he [is] going to be taking me to supposedly where my car is." Mask and the other man, who was Collins, then left in Collins' car, with Lobdell following in the pickup.

The two vehicles pulled off the freeway at an exit ramp. At the

---

[1] The murder of Roy Collins was committed on March 31, 1982. A Monroe County grand jury returned a joint indictment against appellant and his co-defendant, Jerry Mask, during the May 1985 term. Appellant's case was severed from his co-defendant's. He was tried on December 2-4, 1985, and was found guilty and sentenced to life imprisonment on December 4, 1985. His notice of appeal was filed December 23, 1985. On April 17, 1986, the court reporter certified the final volume of the four-volume transcript, and on May 23, 1986, the appeal was docketed in this court. The appeal was argued on September 9, 1986.

bottom of the ramp the appellant saw Collins and Mask fighting in the car, and then saw Mask raise a pistol to Collins' head and fire it. Collins, who had been driving the car, fell back, but then came back at Mask and resumed the fight. Mask again raised the pistol and shot Collins in the head. Collins fell back against the driver's door. At this point Lobdell got out of the pickup and walked to the car, where he tried but failed to open the driver's door from the outside. Mask pulled Collins to the passenger side by pulling on a blanket which was on the seat underneath Collins. Mask then got on the driver's side, and told Lobdell to follow him.

Mask and Lobdell drove down a road a distance, and then turned down a dirt road. They stopped on that road, pulled Collins out of the car with the blanket, and dragged him off the road. Mask asked Lobdell to search him. Lobdell refused, and Mask searched him and took his wallet. They then kicked leaves and dirt on the body, and drove the vehicles back to Mask's apartment in Atlanta. Mask kept the money he found in the wallet, and gave the wallet to Lobdell. The appellant found about $600 in traveler's checks in a hidden compartment. The two men later cashed the checks. Lobdell cleaned the blood from Collins' car and removed all of Collins' property. Lobdell and Mask subsequently drove to Illinois, with Lobdell driving the pickup and Mask driving Collins' car.

Collins' body was discovered in Monroe County, about a mile from Interstate 475 and about three miles from the nearest rest area on that freeway. In April 1985, Lobdell contacted police in Illinois and gave them two statements. Lobdell did not testify at his trial, and these statements were used as evidence.

1. The appellant contends that the trial court erred in denying his motion in limine to exclude evidence of independent crimes which occurred before Collins' murder, because there was no evidence that he perpetrated the extrinsic offenses. We find no error.

The Illinois police officer who took the appellant's statements, Ricky Holman, testified that Lobdell told him that shortly before leaving Atlanta Lobdell and Mask were involved with two other men in the armed robbery and murder of a man named Joe Dalton.[2] Lobdell, Mask, another man named "Phil," and a fourth man, who was unidentified, met in Mask's apartment in Atlanta.[3] All of the men were short on money, and someone suggested that they "roll a queer."

---

[2] The exact date of the incident in Atlanta is uncertain. However, the physician who autopsied Dalton testified that he performed the autopsy on April 2, 1982, and that the state of decomposition of the body was consistent with a date of death two to three days before the autopsy.

[3] Although the record is not entirely clear, it appears that at that time Lobdell was an Illinois resident who was visiting Atlanta, and that Mask was a friend of Lobdell who resided in Atlanta.

Mask, Phil, and Lobdell went to a park which was frequented by homosexuals, where Phil undertook to pick up one. He was at first unsuccessful. They were going to leave, but then Dalton drove up and made contact with Phil. Phil came over to the truck in which the others were sitting, and told them to follow him to Dalton's place. They all went to Dalton's apartment, and entered the bedroom. Dalton and Phil started taking off their clothes. At that point, Phil was in possession of a .38 caliber pistol, and Mask had a .25. Mask became nervous, and told Lobdell to get the .38 from Phil. Lobdell did so, and then pointed the gun at Dalton, telling him, "Now, take it easy." The men searched the apartment for money without success, but Phil found $20 outside in Dalton's vehicle. At that point, Mask, Lobdell, and Phil decided to leave. They left the bedroom and entered a hallway where Mask asked Lobdell and Phil, "What are we going to do about this situation?" Mask then asked Phil, "You have killed before. Do you want to kill him now?" Lobdell said, "I don't care what you people do. I'm leaving." The appellant and Phil left, and went to the pickup.

They drove the pickup to the front of the residence, and Mask came out and got into the pickup. He handed Lobdell the .25 caliber pistol, which had blood on it. Lobdell wiped it off with a paper towel, and they returned to Mask's apartment. On the way there, Mask told them what had happened. He had pointed the gun at Dalton, who was lying face down on the bed. Dalton asked him, "Are you going to kill me?" Mask replied, "No," and then pulled the trigger three times. The gun misfired the first two times, but on the third pull it discharged. In the pickup truck, Mask indicated that he was upset that the gun had misfired. After this incident, Mask and Lobdell used two credit cards which Mask had stolen from Dalton.

"To render evidence of extrinsic offenses admissible . . . , the state must show that the defendant was the perpetrator of the extrinsic offenses, and that there is a sufficient similarity or connnection between the extrinsic offense and the offense charged, such that proof of the former tends to prove the latter." *Williams v. State,* 251 Ga. 749, 755 (4) (312 SE2d 40) (1983). In the case at bar, the evidence was sufficient to show that the appellant was a participant in the armed robbery. As to the murder, he contends that he did not participate in it, but this contention is without merit. Under OCGA § 16-2-20, participants to a crime may be convicted of a crime even though they are not the actual perpetrator. "It matters not whether it was appellant or [his accomplice] who actually fired the gun during the robbery which resulted in [Dalton's] death. The act of one was the act of the other in the commission of the armed robbery and the ensuing death which resulted therefrom." *Strong v. State,* 232 Ga. 294, 298 (206 SE2d 461) (1974). Accord *Cargill v. State,* 256 Ga. 252 (1) (347 SE2d

559) (1986).

The appellant's statement to the others — "I don't care what you people do. I'm leaving." — does not, as appellant argues, require a finding that he abandoned the criminal enterprise before the murder occurred. Instead, it arguably indicates a mere disinterest in the subsequent proceedings inside the house which did not constitute a disavowal of the criminal enterprise, especially in light of the fact that the appellant withdrew only as far as the pickup truck, waited for Mask, drove away with him, continued to associate with him, helped to conceal the crime by wiping the blood from the pistol, and used the fruits of the crime, the credit cards.

2. Appellant also contends that the prior crimes should have been excluded because they were irrelevant. However, we find that the prior crimes were logically connected to the murder of Collins, in that they were part of a crime spree, showing a course of conduct which led to the crime for which the appellant was indicted and convicted. *Rivers v. State*, 250 Ga. 288 (4) (298 SE2d 10) (1982); *Blanks v. State*, 254 Ga. 420 (4) (330 SE2d 575) (1985).

3. Appellant further contends that the prior crimes should have been excluded because the prosecution did not serve notice as required by Uniform Superior Court Rule 31. However, our review shows that Rule 31 was not violated. Rule 31.1 requires the prosecution to notify the defense of its intention to present evidence of similar transactions or occurrences, by giving and filing the notice "at least ten days before trial unless the time is shortened or lengthened by the judge."[4] The record reveals that on October 28, 1985, the state filed a written notice of its intention to use the Atlanta incident, and certified that a copy of the motion was mailed on that date to the appellant's counsel.

4. Lobdell claims that Mask's statements connected with the two murders which were contained in Lobdell's statements to Illinois police were inadmissible hearsay, because Mask's statements were uttered after Lobdell had withdrawn from any conspiracy. However, there is no indication that the appellant raised this objection below, and it therefore is waived. Moreover, even assuming that the issue was preserved for review, we find no error, since, as we find in Division 1, supra, and Division 7, infra, there was evidence to support findings that the appellant was a party to both murders.

5. Appellant asserts that the state's failure to provide him with notes taken by the Illinois police when he gave his statements, and with a tape recording of those statements, constitutes a *Brady* viola-

---

[4] The Uniform Superior Court Rules became effective July 1, 1985, and apply to all cases pending as of that date. The appellant in this case was tried in December 1985.

tion. We disagree, since "a Brady motion does not reach the defendant's own statements made prior to trial, as they are known to the defense. *Cunningham v. State*, 248 Ga. 558 (6) (284 SE2d 390) (1981)." *McCarty v. State*, 249 Ga. 618, 620 (292 SE2d 700) (1982). Accord *White v. State*, 255 Ga. 210 (4) (336 SE2d 777) (1985).

6. The court did not commit error by refusing to suppress the appellant's pretrial statements and the fruits of those statements. Appellant contends that he was already under "constructive arrest" during his interviews with the Illinois police, which took place on April 15 and 16, 1985, and that the police should have formally arrested him and should have read him his *Miranda* rights.

The court found after a *Jackson-Denno* hearing that the interviews were not custodial interrogations. "The standard on appeal is that the trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on appeal unless they are clearly erroneous. *White v. State*, 255 Ga. 210, 212 [2] (336 SE2d 777) (1985)." *Short v. State*, 256 Ga. 158 (3) (345 SE2d 581) (1986). For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in some significant way. "Miranda warnings are not required simply because questioning takes place in a building containing jail cells." *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). The record in the present case supports the trial court's findings, and the appellant's statements were admissible as statements made before any custodial interrogation.

7. Appellant asserts that the evidence was insufficient to prove that he was a party to the murder of Collins, and that the court should have granted his motion for a directed verdict. This enumeration has no merit. All of the participants in a plan to rob are criminally responsible for the acts of each, committed in the execution of the plan, and which may be said to be a probable consequence of the unlawful design, even though the particular act may not have actually been a part of the plan. *White v. State*, supra, 255 Ga. (1); *Cargill v. State*, supra, 256 Ga.

In the instant case, there is circumstantial evidence that Mask and the appellant had at least a tacit plan to rob Collins. This circumstantial evidence includes the previous armed robbery of Dalton, which shows a pattern of conduct, and the fictitious story about Mask running out of gas which was used to lure Collins away from the freeway. Moreover, the murder of Collins was a probable outcome of the plan to rob him, especially given the outcome of the armed robbery of Dalton. Therefore, reviewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime of murder of Collins beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781,

61 LE2d 560) (1979).

8. It is asserted by the appellant that the court improperly intimated an opinion of the evidence during the testimony of a prosecution witness. OCGA § 17-8-57. The witness testified that she cashed one of Collins' traveler's checks while working as a cashier for a Winn Dixie store in College Park, Georgia. She said that the man who had cashed the check was present in court. Later in her testimony, the court told her that her identification was unclear, and asked her several questions to clarify that she meant the defendant. We find that the questions were proper, as they were neutral factual inquiries designed to further elucidate the issues at trial. *Williams v. State*, 250 Ga. 664 (2) (300 SE2d 685) (1983); *Thomas v. State*, 240 Ga. 393 (3) (242 SE2d 1) (1977).

9. Appellant also contends that the trial judge intimated an opinion of the evidence when the state introduced three photostatic copies of traveler's checks which had been stolen from Collins. The defendant objected to the photocopies on the ground that they were not the best evidence. At that point, the court instructed the state on what foundation it would have to lay to have them admitted. The state adduced further testimony as a foundation for the photocopies, and they were then allowed into evidence. We find no error. "The statutory inhibition (OCGA § 17-8-55) [now § 17-8-57] against an expression or intimation of opinion by the trial court as to the facts of the case does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. [Cits.] Furthermore, 'remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.' *Johnson v. State*, 246 Ga. 126, 128 (269 SE2d 18) (1980)." *Mathis v. State*, 171 Ga. App. 620 (1) (320 SE2d 861) (1984).

10. The appellant asserts that the district attorney impermissibly commented upon the appellant's failure to testify. During closing arguments the district attorney summarized the appellant's statement to the Illinois police concerning the robbery and murder of Dalton, and then editorialized that, "I [haven't] heard one thing about any remorse on the part of the defendant here in court about anything that happened [in Dalton's residence]." Defense counsel objected to this comment and moved for a mistrial, to which the prosecutor responded that he had been "trying to refer to the statement [the appellant] had made to Mr. Holman." The trial court denied the motion for mistrial.

We find no error. "In *Ranger v. State*, 249 Ga. 315 (290 SE2d 63) (1982), we applied the two-prong test set forth in United States v. Rochan, 563 F2d 1246 (5th Cir. 1977). Under the test, reversal for improper prosecutorial conduct requires a finding that (1) 'the prosecutor's manifest intention was to comment upon the accused's failure

to testify' or (2) the comment was 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' *Ranger,* supra at 319." *Lowe v. State,* 253 Ga. 308, 309-311 (1) (319 SE2d 834) (1984). In the instant case, it is clear from the context of the prosecutor's statement and the explanation he offered to the court that he did not intend to comment upon the accused's failure to testify, and, moreover, that his argument was not necessarily and naturally construable as a comment on the failure of the accused to testify.

11. Another of appellant's contentions is that his constitutional rights were violated in connection with a controversy over the ownership of the murder weapon. The defendant asserts that the state invaded his constitutional rights[5] by attempting to conceal the fact that the weapon was not his. We find no error. There was evidence to support the state's assertion that the gun belonged to the appellant (or, perhaps, that the appellant and Mask shared it), and there is no showing that any of the appellant's constitutional rights were violated.

12. The appellant claims that the trial court erred by failing to charge, without a request, on the theory of abandonment as his sole defense to the murder of Joe Dalton. We find no error.

"Pretermitting whether this rule is applicable to an extrinsic offense,[6] we find that the rule enunciated in *Booker v. State,* 247 Ga. 74 (274 SE2d 334) (1981) as to an affirmative defense applies, a fortiori, to sole defenses of extrinsic offenses. 'If an affirmative defense is raised by the evidence, including the defendant's own statements, the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request. The affirmative defense, however, need not be specifically charged if the case as a whole is fairly presented to the jury. (Cit.)' Ibid." *Felker v. State,* 252 Ga. 351, 363 (314 SE2d 621) (1984). In the instant case, which involves the extrinsic charge of murder based on criminal liability as an accomplice to the crime, see *Cargill v. State,* supra, 256 Ga., "the effect of [an abandonment] defense is simply to traverse the state's proof. Thus, the failure to specifically charge on [abandonment] as a sole defense to an extrinsic offense, absent a request for such a charge, was not reversible error." *Felker v. State,* supra, 252 Ga. at 363.

---

[5] Appellant asserts that his constitutional rights were violated, but he does not specify which of those rights were infringed.

[6] We also pretermit deciding whether abandonment is an affirmative defense to the charge that the defendant was a party to a crime within the meaning of OCGA § 16-2-20. Compare with OCGA § 16-4-5, which provides that abandonment of an effort to commit a crime is an affirmative defense to the substantive crime of criminal attempt, OCGA § 16-4-1. See generally Kurtz, Criminal Offenses and Defenses in Georgia (2nd ed.), Attempt; Parties to Crime.

13. Lobdell enumerates as error the manner in which the court recharged the jury. In response to a request from the jury for clarification, the court recharged on when a person is a party to a crime, OCGA § 16-2-20 (b) (1), (3), and (4), after having cautioned the jury that it was not the court's intention to place greater emphasis upon that principle of law compared to any others which it had given in its main charge, and that the jury was not to place any such greater emphasis. The appellant contends that by recharging on parties to a crime without recharging on murder, the court thereby intimated an opinion that the crime of murder had been proven. We find no error. " 'Where the jury requests further instructions upon a particular phase of the case, the court in his discretion may recharge them in full, or only upon the point or points requested.' [Cits.]" *Shouse v. State*, 231 Ga. 716, 720 (13) (203 SE2d 537) (1974). There was no abuse of discretion.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 12, 1987.

*William E. Glisson*, for appellant.

*E. Byron Smith, District Attorney, Hugh D. Sosebee, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General*, for appellee.