S95A1079. HODGES v. THE STATE.
(463 SE2d 16)

THOMPSON, Justice.

Leonard C. Hodges was convicted of the malice murder of Kenneth Lee Mayes and sentenced to life in prison.[1] He enumerates four evidentiary errors on appeal. We find no harmful error and affirm.

An anonymous telephone caller informed the police that he was driving through the Stephen Heard Cemetery in Elbert County and saw what he thought was a body. The caller sounded scared and refused to give his name. Upon investigating the call, the police discovered the dead body of Kenneth Lee Mayes in the cemetery. Mayes' hands were bound behind his back with electrical tape and he was shot once in the chest. A .45 caliber shell casing was found nearby.

Mayes had been living in a trailer with Hodges. The police called on Hodges at the trailer, informed him that Mayes had been killed,

---

[1] The victim was murdered between May 29, 1993 and May 30, 1993. Hodges was indicted on July 27, 1993, tried on August 18-20, 1994, and convicted and sentenced on August 20, 1994. His timely filed motion for new trial was denied on February 28, 1995, and his notice of appeal was filed on March 17, 1995. The case was docketed in this Court on April 4, 1995, and orally argued on July 10, 1995.

and asked him if he would permit them to search the trailer for clues. Hodges gave his consent.

In searching the trailer, the police discovered a pair of Hodges' boots, his .45 caliber pistol, and some electrical tape. The soles of the boots appeared to be similar to footprints left at the scene of the crime. The pistol smelled as if it had been fired recently. The electrical tape was different than the tape used to bind Mayes' hands.

The police also found a will which had been handwritten by Hodges and signed by Mayes one week before his death. In the will, Mayes bequeathed all but one of his rings to Hodges.

Hodges allowed the police to take the items they found. The police asked Hodges if he would accompany them to the police station to answer some questions. He agreed to do so. He was "real cooperative."

Hodges told the police that he spent much of the previous day with Mayes and that he last saw him at about 9:00 p.m. when he dropped him off at the trailer. He added that Mayes had gotten into trouble with some drug dealers and had been worried that they would harm him. He explained that his gun smelled like it had been fired because he had been shooting at a tree in his yard the previous day. Hodges also stated that he can get so violent he can punch holes in walls and not remember what he did.

One of the officers, Det. Thompson, noticed that the tires on Hodges' truck had a tread design which was similar to tire marks found at the cemetery. He took a Polaroid picture of the tread design. Returning to the cemetery, the detective compared the soles of Hodges' boots and the photograph of Hodges' tires with the impressions left at the scene of the crime. Upon making those comparisons, the detective became convinced that Hodges murdered Mayes. The time was approximately 6:00 p.m.

Although he knew that Hodges was at the police station answering questions, and although he had a radio, Det. Thompson did not immediately notify his fellow officers of his findings. Instead, he drove to the police station, arriving there about 7:30 p.m.

Det. Thompson immediately arrested Hodges and advised him of his *Miranda* rights. Until that time, Hodges had not been placed under arrest and, according to the police, he would not have been stopped if he attempted to leave the stationhouse. Upon being advised of his rights, Hodges invoked his right to counsel and all questioning ceased. Prior to his arrest, Hodges had been answering questions for approximately 40 minutes.

The police later learned that the night before Mayes' body was discovered, Hodges and Mayes stopped at a convenience store; that Hodges went into the store to buy a roll of electrical tape while Mayes waited in the truck; and that unlike the tape that the police found in

Hodges' trailer, the tape which Hodges purchased was similar to the tape used to bind Mayes' hands.

Based on forensic tests, the police concluded that the .45 shell casing found at the cemetery had come from Hodges' pistol. They also concluded that Hodges was the anonymous caller who said he discovered Mayes' body. Finally, the police found a handwritten note inside Mayes' wallet. The note was signed by Mayes and read: "Leonard C. Hodges did it."

1. The evidence was sufficient to enable any rational trier of fact to find defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hodges asserts the trial court erred in failing to suppress the statements he made to the police. In this regard, he argues that Det. Thompson had sufficient information to warrant Hodges' arrest at 6:00 p.m; that the detective's knowledge was imputed to the other police officers; and that, therefore, any statements made to the police after 6:00 p.m. should have been suppressed.

In effect, Hodges would have us rule that once a police officer has probable cause to arrest, he must arrest and *Mirandize*. But that is not the law. Whether a police officer focused his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes. *Stansbury v. California*, 511 U. S. _____ (114 SC 1526, 128 LE2d 293) (1994). This is so because *Miranda* was fashioned to redress " 'the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions' " when the questioning commenced. Id., 114 SC at 1529.

> Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.

Id. at 1530. Thus, the proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest. See id. at 1529. See also *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987) (*Miranda* does not apply unless a person is "taken into custody or otherwise deprived of his freedom . . . in some significant way").

Hodges contends he was in custody because the police took his boots, gun and electrical tape before they asked him to accompany them to the stationhouse. He argues that any reasonable person would believe he was under arrest under those circumstances. See *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984) (relevant inquiry is how reasonable person in suspect's position

would perceive his situation). We disagree.

The police simply asked Hodges if he would go with them to the stationhouse so they could "talk better." They did not demand that he accompany them. He went along willingly and cooperated fully. Moreover, Det. Thompson told Hodges that he was taking the items he found in the house for purposes of eliminating him as a suspect. A reasonable person would not believe he had been arrested under these circumstances. See generally *Hardeman v. State*, 252 Ga. 286 (313 SE2d 95) (1984) (defendant is not in custody because he accompanies police to stationhouse); *Ingle v. State*, 123 Ga. App. 56 (179 SE2d 305) (1970) (defendant not in custody when questioned in his house even though police were armed with search warrant).

3. Over Hodges' objection, a witness was permitted to testify that seven or eight years previously, Hodges told him that if he were a "hit man," he would bind his victim's hands behind his back with wire or tape, put him on his knees and shoot him with a "high-powered weapon."

In *Maxwell v. State*, 262 Ga. 73, 75 (3) (414 SE2d 470) (1992), this Court held that it was error to allow the state to introduce evidence that defendant had engaged in two conversations in which he explained how he would kill someone. Neither conversation concerned the victim and there was no evidence that the victim was killed in the manner described.

As in *Maxwell*, the statement made by Hodges did not concern the victim; but, unlike *Maxwell*, the victim was killed in the manner described by Hodges. Thus, the statement in this case shed light on Hodges' course of conduct, plan, scheme or bent of mind. See *Barnes v. State*, 245 Ga. 609, 610 (266 SE2d 212) (1980) (statement that defendant killed once and did not mind killing again was relevant to show motive, plan, intent, scheme, bent of mind and course of conduct). The mere fact that the statement was made seven or eight years previously did not render it inadmissible. See generally *Gilstrap v. State*, 261 Ga. 798, 799 (410 SE2d 423) (1991) (similar transaction evidence not inadmissible solely because of lapses of time of 11 or 19 years). Simply put, the statement was relevant and the trial court did not err in allowing it into evidence.

4. A defense witness was allowed to testify that on more than ten occasions she saw tape marks and rope burns on Mayes' wrists and that when she asked Mayes about the marks he explained that he was having "kinky" sex with Diane Hopkins, a "rough lady biker" who tied him up. During an offer of proof, the witness testified that on several occasions she saw Hopkins get mad and threaten to kill Mayes. However, the trial court sustained the state's hearsay objection to the proffered testimony. Hodges contends the witness should have been permitted to testify that Hopkins threatened to kill Mayes.

We agree.

Evidence that Hopkins threatened to kill Mayes was not hearsay. "Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a). The proffered testimony was not offered to prove the truth of the matter asserted therein. Indeed, the statement contained no factual predicate; it was simply a verbal act demonstrating ill will and animosity on the part of Diane Hopkins toward Mayes. *Perry v. State*, 255 Ga. 490, 493 (4) (339 SE2d 922) (1986). The value of the witness' testimony was to be derived from "the credit of the witness" herself and was not to rest on the "veracity and competency" of Hopkins. Cf. OCGA § 24-3-1 (a). It was, therefore, original evidence. OCGA § 24-3-2; *Perry v. State*, supra; *Mulkey v. State*, 155 Ga. App. 304, 307 (270 SE2d 816) (1980).

Citing *Neal v. State*, 210 Ga. App. 522 (436 SE2d 574) (1993), the state contends the trial court properly excluded the proffered testimony even if it were original evidence because defendant was merely speculating that someone else may have committed the crime. In *Neal*, a child molestation case, no evidence was presented that any specific person other than defendant molested the victim. Thus, evidence that the victim's mother was a cocaine addict and had casual relationships with men in her home was ruled inadmissible.

In this case, unlike *Neal*, defendant proffered evidence which pointed to the culpability of a specific person, Diane Hopkins. Furthermore, the evidence does more than cast a bare suspicion on Hopkins. Cf. *Bradford v. State*, 204 Ga. App. 568 (420 SE2d 4) (1992). Coupled with evidence that she often bound Mayes' hands with electrical tape, evidence that Diane Hopkins threatened to kill Mayes bears directly on Hodges' defense and tends to exonerate him. *Walker v. State*, 260 Ga. 737 (1) (399 SE2d 199) (1991).

Hodges' sole defense was that someone else murdered Mayes. The proffered evidence raises the inference that Hopkins murdered Mayes more probable than the inference would have been in the absence of the proffered evidence. *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986). Thus, its exclusion was error. However, in view of the overwhelming evidence of guilt, it is highly probable that the error did not contribute to the jury's verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Accordingly, the exclusion of the proffered evidence was harmless. Compare *Walker v. State*, supra; *Henderson v. State*, supra.

5. A previous jury mistried the case and Hodges asserts the trial court should have allowed a member of that jury to testify that during deliberations an electrical plug was discovered in Hodges' boot. According to Hodges, the juror's testimony would show that Hodges could not have worn the boot on the night of the murder and that the

state's expert could not have examined the boot carefully. The value of this testimony was slight, at best, and outweighed by its potential for prejudice. We find no error.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

FLETCHER, Presiding Justice, dissenting.

I cannot agree that Hodges' statement of eight years earlier regarding how he would kill someone if he were a hit man is relevant; nor can I agree that excluding relevant evidence that supports Hodges' sole defense is harmless error. Therefore, I dissent.

1. The majority concludes that Hodges' statement regarding how he would kill someone if he were a hit man is relevant to "Hodges' course of conduct, plan, scheme or bent of mind."[2] This talismanic litany does nothing to illuminate the logical connection between the statement and any material issue in the trial. The statement sheds no light on any course of conduct, because there was no evidence that Hodges had ever killed in this manner. Nor is the statement relevant to a scheme or plan in the absence of evidence that Hodges was planning to kill the victim or anyone else when he made the statement eight years ago. Finally, because "a person's bent of mind is dangerously close to being his character"[3] the statement should have been excluded under OCGA § 24-2-2.[4]

Finally, the majority's reliance upon *Barnes v. State*[5] is misplaced. In *Barnes* the statement that the defendant had killed once and did not mind killing again was made six weeks before the murder and, in context with other statements, was actually a threat against a member of the victim's family. A casual comment by Hodges eight years ago while he was a correctional officer about how he would carry out a contract killing if he were a hit man is not logically connected to this murder.

2. I agree with the majority that it was error to exclude the testimony of Amber Britain that she saw Hopkins, the "rough lady biker," get mad and threaten to kill the victim. Hodges' sole defense was that someone else, possibly Hopkins, killed the victim. Britain's testimony described the volatile nature of Hopkins' relationship with the victim and Hopkins' explosive temper. Britain's testimony was not offered to

---

[2] Majority op. at 873.

[3] *Farley v. State*, 265 Ga. 622, 630 (458 SE2d 643) (1995) (Sears, J., concurring specially).

[4] The state argues by rote that this evidence was also relevant to motive and intent. The statement, however, cannot be connected to motive because the state admitted that it did not attempt to prove motive. Nor does the statement tend to illuminate Hodges' intent to kill where Hodges has not raised a defense of accident or justification.

[5] 245 Ga. 609, 610 (266 SE2d 212) (1980).

prove that Hopkins made a specific threat against the victim's life. Rather, her testimony was offered to show a volatile and contentious relationship, and an explosive temper, and thus a motive for the killing.[6]

The majority's reliance on harmless error, however, is baffling. Hodges had one defense and this testimony supported that defense. The state's theory of how Hodges committed the murder was barely plausible and the evidence of Hodges' guilt was far from overwhelming. For example, the tire and boot prints found at the scene had no uniquely identifying features and could have been made by numerous other tires or boots. Additionally, far from "concluding" that Hodges was the anonymous caller who discovered the body, the dispatcher testified that "I'm not saying that was [Hodges]," but only that the voice was "familiar." Finally, the majority's view of the record is belied by the fact that a previous jury failed to agree on a verdict and a mistrial was declared.

I would reverse based on these two prejudicial errors. I am authorized to state that Justice Sears joins in this dissent.

DECIDED OCTOBER 30, 1995 —
RECONSIDERATION DENIED NOVEMBER 20, 1995.

*Smith & Hodges, Thomas L. Hodges III, Hudson & Montgomery, James E. Hudson,* for appellant.

*Lindsay A. Tise, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Michael D. Groves, Peggy R. Katz, Assistant Attorneys General,* for appellee.

---

[6] *Perry v. State,* 255 Ga. 490, 493 (339 SE2d 922) (1986).