S98A0965. McALLISTER v. THE STATE.
(507 SE2d 448)

HINES, Justice.

A jury found Michael Gabriel McAllister guilty of malice murder in the strangulation death of Donna Evelyn Ward. Following the denial of his motion for new trial, McAllister appeals his murder conviction, challenging the admission of his inculpatory statement to investigators, the admission of autopsy photographs of the victim, and the sufficiency of the evidence of guilt. The challenges are without merit, and we affirm.[1]

---

[1] The victim's body was discovered on October 6, 1995. A Gwinnett County grand jury

On the morning of October 6, 1995, Donna Ward was found dead by her seven-year-old son; she was lying nude in a few inches of water in her bathtub. The cause of death was determined to be strangulation by a soft and broad object, consistent with the crook of an arm held in a "choke hold" manner. Ward also had two bruises to the head from blunt impact which could have been caused by a fist.

Ward had known McAllister for about three years. McAllister drove a taxicab and would often help Ward with her transportation needs. He also developed a friendship with Ward's seven-year-old son. McAllister wanted a more serious relationship with Ward and to become her husband and assume the role of the child's father; however, Ward still cared for her son's biological father and was planning to move nearer to him, facts which upset McAllister.

The day before Ward was found murdered, she took her son to work with her at a local restaurant. At the end of her shift, Ward, her son, and a male co-worker, Stanfield, went to Ward's home. Ward and Stanfield talked and smoked some marijuana. Later that afternoon, Ward paged McAllister to come to her home to pick up Stanfield and take him back to work. McAllister did so, and Ward paid him the cab fare. During the drive, Stanfield tried to converse with McAllister, but McAllister appeared angry and would not respond.

Following the murder, police met with Ward's family. A family member told an investigator that Ward had been involved in some type of relationship with McAllister. McAllister was interviewed several times by police. During an interview on December 13, 1995, McAllister made an oral confession. He was placed under arrest, given *Miranda* warnings,[2] and he executed a written waiver. McAllister then recounted his version of events, and the account was reduced to writing.

McAllister's written statement was that Ward called McAllister and asked him to pick up Stanfield from her house; McAllister was upset with Ward because Stanfield was there; in the early morning hours of October 6, 1995, McAllister drove back to Ward's house to find out why she had been with Stanfield; Ward let McAllister inside and told him that she was smoking marijuana with Stanfield; McAllister asked if Stanfield had "wanted anything else" and Ward responded that was why she had called McAllister; McAllister asked if he was Ward's "trash collector," and she responded that at that

<hr>

indicted McAllister for malice murder on April 30, 1996. He was tried before a jury on August 4-6, 1997, and found guilty. McAllister was sentenced to life imprisonment on August 7, 1997. He filed a motion for new trial on August 18, 1997, and the motion was denied on January 27, 1998. The notice of appeal was filed on February 18, 1998, and the appeal was docketed in this Court on March 24, 1998. The case was submitted for decision without oral argument on May 18, 1998.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

point he was; McAllister complained about Ward's treatment of him; he was tired of bailing Ward out of trouble and thought that he had shown her a better way of life; Ward asked McAllister to leave; when he started to, Ward said, "yeah, that's it[,] run back to your mother's house"; McAllister came "unglued"; he raised his hand and hit Ward in the back of the head with an "open fist"; Ward slumped and McAllister tried to catch her, grabbing her from behind, around the neck with the crease of his elbow and forearm; McAllister "didn't realize" he had squeezed her neck; Ward went limp and fell to the floor; McAllister picked her up and put her on the couch; he went to the bathroom and filled the bathtub with a few inches of water; he returned to the couch, picked Ward up and placed her in the bathtub "to wake her up"; when Ward did not come to and McAllister determined that she had no pulse, he panicked; he drove home and crawled into bed; McAllister went to work at 6:00 a.m.

After the written statement, McAllister telephoned his mother, saying to her, "Mama, they got me. They got my hair and fibers, and someone seen my cab at Donna's house. Mama, I did it; they got me." On the way to the jail, McAllister ranted, "Oh my God, Donna, what have I done. I've f_ _ _ _ _ up my life."

The autopsy revealed physical signs that Ward was not unconscious at the time she was strangled, and that she had engaged in a struggle. The medical examiner testified that for a neck hold of the nature inflicted on Ward to result in death, the pressure would have to be applied for at least ten to fifteen seconds. Moreover, the hemorrhages in Ward's neck implied a more substantial level of force than mere compression of the carotid arteries.

1. McAllister contends the trial court erred in allowing evidence of his statement of the circumstances of Ward's death at the December 13, 1995 meeting with police because it was given without his being advised of his constitutional rights pursuant to *Miranda*. During the two-month investigation of Ward's murder, McAllister met for discussion with police investigator King six times and was told that he was considered a suspect; the last three meetings took place at the police station. McAllister had not been given *Miranda* warnings on any of the previous meetings, and was not given any prior to the December 13 meeting.

By arrangement, King met McAllister on the steps of the police station on December 13. Prior to entering, King assured McAllister, as he had at the previous meetings, that he was not under arrest or being detained, that anytime he felt uncomfortable he could get up and walk out, that he was free to leave at anytime. They entered, were joined by investigator Lang, and went to the same interview room where the prior meetings had taken place. This room was in an area of the police station that was behind a security door; King had to enter a security code to pass through the door to enter the area, but

to exit the door opened by simply turning the doorknob. Lang asked McAllister to provide written answers to written questions, and the officers left McAllister alone for approximately 15 minutes to do so. The door to the interview room was left open at McAllister's request.

After McAllister completed his written answers, Lang discussed those answers with McAllister for approximately an hour or two. Lang then informed King that McAllister had made an inconsistent statement concerning his presence at Ward's house, and King re-entered the interview room. McAllister asked if someone had seen his vehicle at Ward's home the night of the murder and, when King did not answer, said Ward's name and "what have I done, what have I done." McAllister then said he wanted to tell the truth, King said he wanted McAllister to tell the truth, and McAllister gave a narrative of the circumstances of Ward's death. He was placed under arrest, given *Miranda* warnings, and then made a written statement. McAllister never asked for an attorney and never indicated a desire to terminate the interview, either before or after the *Miranda* warnings. He reviewed the draft, marked out certain words or phrases, and signed the statement. Following a *Jackson-Denno* hearing,[3] the court found that McAllister was not in custody when he made his initial statement and allowed evidence of McAllister's statement to be considered by the jury.

A person is entitled to *Miranda* warnings only if the person has been taken into custody or deprived of freedom of action in a significant way. *Moses v. State*, 264 Ga. 313, 314 (1) (444 SE2d 767) (1994); *Woods v. State*, 242 Ga. 277, 279 (2) (248 SE2d 612) (1978).

> Whether a police officer focused his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes. *Stansbury v. California*, 511 U. S. [318 (II)] (114 SC 1526, 128 LE2d 293) (1994). This is so because *Miranda* was fashioned to redress " 'the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions' " when the questioning commenced. Id., 114 SC at 1529. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Id. at 1530. Thus, the proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest. See id. at 1529. See also *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987).

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

*Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). In resolving this issue, the "relevant inquiry is how [a] reasonable person in [the] suspect's position would perceive his situation" Id. See also *Childs v. State*, 257 Ga. 243, 247 (3) (a) (357 SE2d 48) (1987).

Under this objective standard, the trial court was authorized to find that McAllister was not in custody when he made his oral statement, and the ruling must be upheld. *Baldwin v. State*, 263 Ga. 524, 525 (1) (435 SE2d 926) (1993); *Fowler v. State*, 246 Ga. 256, 257 (3), 258 (271 SE2d 168) (1980). See also *Raulerson v. State*, 268 Ga. 623, 626 (2) (b) (491 SE2d 791) (1997).

However, even assuming arguendo that the trial court erred in finding that the oral statement did not violate *Miranda*, there is no basis for reversal. The State introduced McAllister's written statement, which was made after *Miranda* warnings were given. On direct examination, King did not testify as to the content of McAllister's oral statement, only that it contained admissions; the only details of the statement's content were presented as a result of questions on cross-examination. As the introduced written statement was given after proper warnings, and it supported the pre-*Miranda* statement, any error in admitting testimony about the oral statement was rendered harmless. *Johnson v. State*, 266 Ga. 775, 777 (5) (470 SE2d 637) (1996).

2. McAllister likewise fails in his contention that the trial court violated the rule announced in *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983), by allowing into evidence two autopsy photographs admitted as State's Exhibit Nos. 18 and 19. The photographs depict the victim's skull with the scalp removed, forward and backward, exposing the bone and showing bruises to the top and left side of the victim's head. The top bruise was three and a half by one and a half inches, and the hemorrhage was not confined to the scalp but was also under the membrane that covers the top of the bone, indicating a considerable amount of force was used to inflict it. The bruise on the left side of the head was confined to the scalp and was somewhat smaller, indicating that it had been inflicted with less force than the other. These bruises were not visible until the scalp had been deflected, and they revealed injury to the victim inconsistent with the defendant's version of events. Thus, the photographs demonstrated material facts concerning the manner of death. *Carr v. State*, 265 Ga. 477 (1) (457 SE2d 559) (1995). What is more, the photographs assisted the medical examiner in explaining the victim's injuries to the jury. *Holland v. State*, 267 Ga. 833, 836 (2) (483 SE2d 584) (1997).

3. The jury was instructed on the lesser offenses of voluntary manslaughter, felony involuntary manslaughter, misdemeanor involuntary manslaughter, and simple battery, as well as on a defense of accident. But the evidence was sufficient to enable the jury, as it did,

to find McAllister guilty beyond a reasonable doubt of Ward's malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 1998.

*Ronnie K. Batchelor,* for appellant.

*Daniel J. Porter, Jr., District Attorney, R. Keith Miles, Assistant District Attorney, Thurbert E. Baker, Attorney General,* for appellee.