S99A1283. JACKSON v. THE STATE.
(528 SE2d 232)

</div>

HINES, Justice.

Dequentin Bernard Jackson was convicted of malice murder, feticide, armed robbery, aggravated battery, and participation in criminal gang activity by a person under 18 years of age, in connection with the death of Wendy Hearn. For the reasons that follow, we affirm in part and vacate in part.[1]

---

[1] Hearn was killed on December 1, 1994. On December 20, 1994, Jackson was indicted by a Fayette County grand jury for malice murder, felony murder in the commission of aggravated assault, feticide, armed robbery, aggravated battery, and participation in criminal gang activity. He was tried before a jury February 27-March 2, 1995, and found guilty on all counts except felony murder, on which no verdict was returned. On March 2, 1995, he

Hearn was killed by a gunshot wound to the head while working at a dry cleaning store. She was eight months pregnant and her unborn child also died as a result of the shooting. There was a pair of blood splattered shorts hanging by the cash register that had Jackson's name and telephone number on the attached ticket. Investigators questioned Jackson, then 14 years of age, in the presence of his uncle at his grandfather's house, where Jackson resided. The uncle gave his consent to a search of the house, except for the grandfather's bedroom; the grandfather was not present. Jackson gave a written statement explaining that he had been to the cleaners to retrieve the shorts, but they were not ready yet. At an investigator's request, Jackson agreed to have his hands wiped for a gunshot residue test and stated that he had been target practicing earlier. The test was to be done at the crime scene and an officer accompanied Jackson up the stairs to get his shoes. The officer advised him to make sure everything he told them was the truth, which was repeated by lead investigator Major Jordan. Jackson then stated that he was at the cleaners with "a dude named Jack," and "I did it with a dude named Jack."

Jackson's grandfather had just arrived at the house and came up to the officers and Jackson at this time. The police allowed the grandfather to have a short private conversation with Jackson, and his grandfather advised him to tell the truth. Jackson repeated that he was involved, but that Jack was the shooter. When Jordan stated that this version would not make sense if Jackson had gunpowder residue on his hands, Jackson confessed to being the shooter, but stated that Jack had the gun. Jackson was taken to the crime scene where the gunpowder test was conducted. While there Jackson summoned Jordan inside and told him where in his grandfather's house the police could find the murder weapon and robbery proceeds.

Later, at the sheriff's office, Jackson was advised of his *Miranda* rights and interviewed in the presence of his grandfather. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He admitted that he went to the cleaners alone to rob it, and that he fired the bullet which killed Hearn and resulted in the death of her unborn child. He also told the officers that he did this to elevate his ranking in his street gang. The videotape of this interview was

was sentenced to consecutive life terms for malice murder, feticide, and armed robbery, twenty years in prison for aggravated battery, to be served consecutively to the life terms, and three years in prison for participation in criminal gang activity, to be served consecutively to the sentence for aggravated battery. Jackson filed a motion for new trial on March 6, 1995. On January 14, 1999, the trial court entered an order allowing the withdrawal of Jackson's motion for new trial and ordered that Jackson have 30 days in which to file a notice of appeal. He filed his notice of appeal on February 8, 1999, the appeal was docketed in this Court on June 3, 1999, and submitted for decision on July 26, 1999.

shown at trial.

1. Jackson contends the evidence was insufficient to convict him of participation in criminal gang activity. The jury was charged on former OCGA § 16-15-4 (b) (1), which was then applicable. Under that Code section, the State was required to show that Jackson committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . ." Jackson's own statement at the sheriff's office allowed the jury to infer that the robbery and killing of Hearn were undertaken in association with his participation in a criminal street gang, for the purpose of furthering his own rank and influence within the gang, and to perpetuate the gang and its rank structure. The evidence was sufficient to enable a rational jury to find beyond a reasonable doubt that Jackson was guilty of all crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Jackson was sentenced for both malice murder and aggravated battery. Although there is no merger of the two crimes as a matter of law, the aggravated battery conviction may merge into the malice murder conviction as a matter of fact. *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). The indictment alleged that Jackson committed aggravated battery in that he "did maliciously cause bodily harm to . . . Hearn, by seriously disfiguring her body by shooting her in the forehead with a gun. . . ." Review of the record shows that the evidence used to prove that Jackson committed aggravated battery is the same as that used to prove he committed malice murder. Therefore, the aggravated battery merged into the malice murder as a matter of fact, and the separate judgment of conviction and sentence for the aggravated battery must be vacated. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

3. The court refused to suppress the statements that Jackson made to the sheriff's deputies before he was taken to the sheriff's office. Jackson contends that by the time he made these statements, he had become a suspect, was in custody and being interrogated, and that he should have been informed of his *Miranda* rights. On appeal, the issue is whether the trial court was clearly erroneous in its factual findings regarding the admissibility of the statements. *Dixon v. State*, 267 Ga. 136, 139 (3) (475 SE2d 633) (1996).

Whether Jackson was a suspect is not the controlling issue. *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). The first proper inquiry is whether he was in custody for purposes of *Miranda*. Id. Accord *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1992).

There are four statements at issue. The first was Jackson's admission to involvement with "Jack," made at the top of the stairs.

Jordan testified that he originally believed Jackson was too calm to have just committed the murder and that until Jackson stated that he was involved, Jordan did not think he was. Up to that time, all contact between the sheriff's deputies and Jackson was by consent. A reasonable person in Jackson's position, having just confessed to involvement in a crime in the presence of law enforcement officers would, from that time forward, perceive himself to be in custody, and expect that his future freedom of action would be significantly curtailed. See *Hodges*, supra; *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). Jordan testified that he considered Jackson to be in custody after Jackson first stated that he was involved in the crime, but not before, and the trial court did not err in finding that Jackson was not in custody when he made the first statement. The question is whether, while in custody, Jackson made any statements in response to an interrogation. *Walton v. State*, 267 Ga. 713, 717 (4) (482 SE2d 330) (1997).[2]

The second statement was made after Jackson was permitted to be alone with his grandfather, and it was in response to that discussion that he again admitted involvement with "Jack." Such a statement in response to a family member's question or encouragement is not a violation of *Miranda*. See *Cook v. State*, 270 Ga. 820, 826 (2) (514 SE2d 657) (1999).

However, after this admission, Jordan noted that any statement by Jackson that he was not the shooter would not make sense if it were shown that Jackson had gunpowder residue on his hands. It was in response to this comment that Jackson stated that he was the shooter, and Jordan's remark must be considered "words or actions . . . that [he] should [have] know[n] [were] reasonably likely to elicit an incriminating response from the suspect." (Punctuation omitted.) *Walton*, supra. Consequently, Jackson's statement that he, and not Jack, was the shooter must be considered to have been made in a custodial interrogation without the benefit of *Miranda* warnings and was wrongly admitted.

Finally, the statement Jackson made to Jordan while at the cleaners, telling him where the weapon and money could be found, was not in response to any interrogation, but was a statement initiated by Jackson himself. See *Miller v. State*, 263 Ga. 723 (3) (438 SE2d 81) (1994). *Miranda* concerns only questioning initiated by law enforcement officers after a person has been taken into custody. Supra at 444.

However, admission of Jackson's statement that he was the

---

[2] Jackson urges that the officers' comments that he should tell the truth show that he was being interrogated within the meaning of *Miranda*, but even if those comments do show interrogation, Jackson was not then in custody and *Miranda* did not apply.

shooter must be deemed harmless. See *McAllister v. State*, 270 Ga. 224, 228 (1) (507 SE2d 448) (1999). Jackson admitted to committing the crimes in a videotaped interview after receiving *Miranda* warnings. The trial court found that, in the totality of the circumstances, this statement was voluntarily given. See *Linares v. State*, 266 Ga. 812, 813 (2) (471 SE2d 208) (1996); *Livingston v. State*, 264 Ga. 402, 407-408 (6) (444 SE2d 748) (1994). The court specifically considered the factors set forth in *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976), the test for considering the voluntariness of a juvenile's statement. The court's finding that the statement was voluntary was not clearly erroneous. See *Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505) (1995). Jackson's earlier statement was nothing more than the bare admission that he had shot Hearn. His videotaped statement gave considerably more detail about the crime. As this statement was properly admitted, the error in admitting the previous statement was harmless.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 13, 2000.

*Lloyd W. Walker,* for appellant.

*William T. McBroom III, District Attorney, Randall K. Coggin, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.