**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2017**

# In the Court of Appeals of Georgia

A17A0860. CARTER v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for aggravated assault and other crimes, Robert Carter argues that the trial court committed plain error and violated the former version of OCGA § 17-8-57 when it reminded a witness during her direct examination that she was "in the room" when a co-defendant uttered a threat. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that late on the evening of November 18, 2009, the male and female victims were at their home in DeKalb County when Edward Brooks knocked on their door. When the male victim let Brooks into the house, Carter entered behind Brooks. Brooks brandished a handgun and told the male victim that Brooks was going to kill him. Carter, who was also carrying a gun, pointed it at the male victim's feet. Brooks and the male victim grappled over Brooks's gun, which discharged into the floor during the struggle. When Brooks and Carter fled, the male victim ran across the street and called 911.

Brooks and Carter went to the home of Justin Moore, where Brooks asked for a ride to a store. The three men got into a van with Brooks driving. Police soon located the van and pulled it over. As they did so, Brooks threw the handgun he was carrying to Moore, who put it "up under the seat." The officer making the traffic stop of the van saw a handgun between the door jamb and seat on the passenger side and a second handgun at Moore's feet in the back seat.

Brooks and Carter were arrested, and each man was charged with two counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a convicted felon. Brooks pled guilty in the middle of trial and testified for the defense. Moore was charged with and pled guilty to possession of a firearm by a convicted felon.

On direct examination by the State, the female victim testified that she was in the living room when Brooks entered it with a gun. The following colloquy then took place:

[Q]    And what was [Brooks] saying while he had that gun in his hand?
[A] He had said what I said he said before[,] and he said it once, he was holding the gun, and it wasn't pointed, and I left, I left the room.
[Q]    What else was he saying?
[A]    Like what? Such as?

At this point, the trial court addressed the female victim: "*Ma'am, you were in the room*. What else did [Brooks] say in your presence that you know [of]?" (Emphasis supplied.) The State then resumed its examination by asking, "What did [Brooks] say about Felicia Putney?"[1] The victim responded:

---

[1] Putney, who also lived in the house, was not in the room at the time of the charged assault and did not testify at trial.

[A]  Oh, okay. He said that we were trying to hook her up with somebody else, you know, which wasn't true.

[Q]  And was he angry about that?

[A]  Yes.

Carter's trial counsel did not object to any of these proceedings.

After a jury found Carter guilty of the aggravated assault and the first firearm charge, the State introduced a copy of Carter's prior felony conviction. The jury then found Carter guilty of possession of a firearm by a convicted felon. Carter was convicted and sentenced to seventeen years with twelve to serve. His motion for new trial was denied.

1. The evidence outlined above was sufficient to sustain Carter's conviction. See OCGA §§ 16-5-21 (a) (defining aggravated assault, including assault "[w]ith a deadly weapon"); 16-11-106 (b) (defining possession of a firearm during the commission of a felony); 16-11-131 (b) (defining possession of a firearm by a convicted felon); *Jackson*, supra.

2. Carter's only asserted error on appeal is that the trial court committed plain error when it reminded the female victim that she was "in the room" when Brooks made certain statements even though her presence was a material fact for the jury to determine. We disagree.

Carter was tried in 2011, at which time former OCGA § 17-8-57 provided:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

This Code section was amended effective July 1, 2015 (Ga. L. 2015, p. 1050, § 1), before the denial of Carter's motion for new trial, and now provides:

(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.
(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.
(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, *unless such violation constitutes plain error which affects substantive rights of the parties*. Plain error may be considered on appeal even when

5

a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

(c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

Both versions of OCGA § 17-8-57 "provide that it is error for the trial court to express or intimate his opinion about what has or has not been proved." *Quiller v. State*, 338 Ga. App. 206, 208 (789 SE2d 391) (2016) (citations omitted). Applying subsection (b) of the new statute, we review any allegedly improper statement for plain error. Id. at 209 (applying OCGA § 17-8-57 (b) retroactively to cases tried prior to the statute's effective date). In the absence of any objection by Carter to the comments at issue, "we must determine whether there is an error that has not been affirmatively waived, is clear and obvious, affects the defendant's substantial rights, *and* seriously affects the fairness, integrity or public reputation of the judicial proceedings." Id. (citation and punctuation omitted; emphasis supplied). "Satisfying all four prongs of [the plain error test] is difficult, as it should be." *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation and punctuation omitted).

Here, both the trial court's restatement of what the victim had testified to — "Ma'am, you were in the room" — and its immediately following question — "What

else did [Brooks] say in your presence that you know [of]?" — were designed not to express an improper opinion as to what had or had not been proved, but to elucidate the issues before the jury. The premise of the court's question was that the victim had already said that she was in the room, and so she might have heard what Brooks said while he was also there. "A trial court's instruction to a defendant to give responsive answers does not indicate an opinion as to either the defendant's credibility or his guilt or innocence." *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006) (citation omitted). Accordingly, the trial court's comments were not clearly erroneous. See *Ford v. State*, 298 Ga. 560, 564-565 (5) (783 SE2d 906) (2016) (where a ballistics expert had testified that bullets retrieved from decedents' bodies were fired from a .40 caliber gun, trial court's statement that "there is evidence that the gun that shot the bullets that killed these people [was] .40 caliber" was not an opinion about the veracity of the evidence itself); *Lobdell v. State*, 256 Ga. 769, 774 (8) (353 SE2d 799) (1987) (judge's questioning of prosecution witness in effort to clarify her identification of defendant constituted "neutral factual inquiries designed to further elucidate the issues at trial") (citation omitted).

But even assuming that the trial court's reminder that the witness has just testified that she was "in the room" amounted to clear error, we cannot say that the

court's statement "affected [Carter's] substantial rights" because it is not likely that "the . . . error affected the outcome of the court proceedings." *Quiller*, 338 Ga. App. at 210 (citation omitted). Here, as in *Quiller*, the trial court instructed the jury that Carter was presumed innocent until the State overcame that presumption with evidence sufficient to prove guilt beyond a reasonable doubt and that Carter was "under no duty to present any evidence tending to prove innocence." This trial court also instructed the jury that "[b]y no ruling or comment [did] the court intend[ ] to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the [guilt] or innocence of the defendant." In light of these instructions, as well as the evidence tending to prove Carter's guilt, we cannot conclude that the trial court committed plain error when it responded to the witness here. Id.

*Judgment affirmed. Bethel, J., concurs. McFadden, P. J., concurs fully in part and specially in part*.

A17A0860. CARTER v. THE STATE.


McFADDEN, Presiding Judge, concurring fully in part and specially in part.

I concur fully in Division 1, but only in the judgment of Division 2 because I don't agree with all that is said in Division 2.

As to application of the plain error rule to this case, I agree that, while arguably improper, the trial court's comments were not clearly and obviously erroneous. It is at least arguable that the trial court's admonitions to the witness were primarily concerned with — and most likely would have been perceived by the jury as primarily concerned with — the witness's manner of testifying, rather than the substance of her testimony.

So I would not address the other prongs of the plain error analysis. In particular I disagree with the majority's suggestion that pattern charges on the presumption of innocence and the burden of proof are sufficient to inoculate against judicial comments that would otherwise constitute plain error.