## S04A0640. HENLEY v. THE STATE.
(596 SE2d 578)

THOMPSON, Justice.

Albert Thomas Henley was convicted of felony murder stemming from the beating death of his 13-year-old son, Antonio Gunn.[1] On appeal, Henley challenges the admissibility of certain statements made to police both prior to and after receiving *Miranda* warnings. Finding no error, we affirm.

Viewed in a light most favorable to the verdict, the evidence shows that Sabrina Henley, Henley's wife and the child's stepmother, arrived home to find Henley with blood on his shirt and a belt and extension cord in his hand. Henley told his wife, "I'm glad the Lord has taught me how to whip [Antonio]." The child was sitting on his bed crying and complaining that he had difficulty breathing. While Mrs. Henley ran a bath for Antonio, she heard Henley continue to beat the child. She went back into Antonio's room and asked him to take his bath. Henley followed Antonio into the bathroom where he hit him again with the belt, causing him to fall unconscious. Henley then telephoned the home of his pastor and told the pastor's wife that Antonio had been mischievous and was no longer moving. She told him to check Antonio's pulse while she waited on the phone; when Henley returned to the phone, he told the pastor's wife that Antonio's heart had stopped beating. Henley ultimately called 911 and summoned help.

Paramedics arrived at the home to find the child dead and in

---

[1] The crimes took place on August 21, 2000. On October 23, 2000, a grand jury indicted Henley for malice murder, three counts of felony murder, and the underlying felonies of aggravated assault, aggravated battery, and cruelty to children. Trial commenced on October 22, 2001. Henley was acquitted of malice murder but found guilty of all other charged offenses. The trial court sentenced him to life imprisonment on October 30, 2001 and denied his timely filed motion for new trial on September 26, 2003. Henley filed a notice of appeal on October 24, 2003, the case was docketed in this Court on December 19, 2003, and was submitted for a decision on the briefs on February 9, 2004.

rigor mortis. Police investigators first spoke with Henley at the scene, where he stated that he had come home to find Antonio in bed. Mrs. Henley told the police that Antonio was not breathing and they thought he might have had a heart attack. Henley appeared to be agitated and the officers asked him if he would go with them to their office so they could ask about the events of the evening. Henley voluntarily rode with the detectives to the station. He was in an unmarked car which could have been opened from the inside; he was neither physically restrained nor formally arrested.

Detectives Hughes and Hilton took Henley's statement in an interview room at the station. Their initial questions were aimed at acquiring background information about the child and the family. During the interview, Henley volunteered that he asked Antonio for his belt after the two had a confrontation. At that point, Detective Hughes stopped the interview and read Henley his *Miranda* rights, whereupon Henley signed a written waiver. After executing the *Miranda* waiver, Henley confessed that he hit the child with a belt at least 50 times that evening. It was then that he was placed under arrest.

It was established that the victim died as a result of blunt force injuries. There were numerous impact wounds to the body, many of which were inflicted by a belt and looped cord. Police investigators found blood spattered about Henley's home and two belts and an extension cord at the scene.

1. The evidence was sufficient to enable any rational trier of fact to find Henley guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Henley contends that the trial court erred in failing to exclude his pre-*Miranda* statements made to the detectives at the police station on the basis that they were obtained as the result of a custodial interrogation.

> *Miranda* protections adhere when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. [Cits.] Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required.

(Punctuation omitted.) *Heckman v. State*, 276 Ga. 141, 143 (1) (576 SE2d 834) (2003). To determine if an individual is in custody for purposes of *Miranda*, courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a

formal arrest. *California v. Beheler*, 463 U. S. 1121, 1125 (103 SC 3517, 77 LE2d 1275) (1983); *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001). This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U. S. 99, 112 (116 SC 457, 133 LE2d 383) (1995); *Hightower v. State*, 272 Ga. 42, 43 (526 SE2d 836) (2000).

Henley argues that *Miranda* warnings were required because he and his wife were immediately considered suspects, and the interrogation was aimed at eliciting incriminating information. But whether Henley was a suspect at the time of the questioning is not dispositive of the custody issue. Whether "a police officer focuse[s] his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes." *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995), citing *Stansbury v. California*, 511 U. S. 318, 324 (114 SC 1526, 128 LE2d 293) (1994). "[T]he proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest." *Hodges*, supra at 872.

Henley voluntarily agreed to ride with the officers to the police station to answer their questions. See *Hodges*, supra at 873. Detective Hughes testified that he did not consider Henley a suspect at the beginning of the interrogation, and Detective Hilton "had no idea what [Henley's] particular involvement was." Furthermore, the detectives' initial questions concerned only the family history and the victim's background, and were unlikely to elicit incriminating information. See *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980); *Smith v. State*, 264 Ga. 857 (3) (452 SE2d 494) (1995). We conclude that a reasonable person under these circumstances would have felt at liberty to end the questioning and leave. It follows that the trial court did not err in admitting Henley's pre-*Miranda* statement.

3. Henley contends that the trial court erred in failing to exclude his post-*Miranda* statement on the basis that he did not knowingly and intelligently waive his rights.

In determining the admissibility of a custodial statement,

a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. [Cit.] . . . Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

*Escutia v. State*, 277 Ga. 400, 402 (1) (589 SE2d 66) (2003). To make that determination, courts should look to "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U. S. 458, 464 (58 SC 1019, 82 LE 1461) (1938). See also *Reinhardt v. State*, 263 Ga. 113, 115 (428 SE2d 333) (1993) (setting forth factors to be considered in determining whether a waiver was knowingly and intelligently made); *Ross v. State*, 254 Ga. 22, 25 (326 SE2d 194) (1985).

Henley was 37 years old at the time of the interrogation. He had received an eleventh grade education and was literate enough to read the Bible daily. He was informed of his *Miranda* rights after being questioned for approximately one hour, and he then read those rights back to the detectives before signing the waiver. The detectives testified that Henley appeared to understand what he was signing, did not appear to be under the influence of drugs or alcohol, was very cooperative, never asked for an attorney, and never asked to terminate the interview. Having reviewed the record, we conclude the trial court did not err in finding that Henley's custodial statement was freely and voluntarily given. See *Escutia*, supra at 401 (1); *Roebuck v. State*, 276 Ga. 136 (1) (575 SE2d 895) (2003).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 3, 2004.

*Betsy L. Clink*, for appellant.

*J. Tom Morgan*, District Attorney, *Barbara B. Conroy*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Julie A. Adams*, Assistant Attorney General, for appellee.