## S07A0450. GRAYER v. THE STATE.

(647 SE2d 264)

HUNSTEIN, Presiding Justice.

Curtis Grayer was convicted of felony murder, rape, and other crimes in connection with repeated instances of sexual and physical abuse of his young step-daughter, L. H., resulting in the conception and birth of an extremely premature infant, who, having received no medical attention, died within a few hours of birth. Appellant appeals the denial of his amended motion for new trial. For the reasons that follow, we affirm in part and vacate in part.[1]

The jury was authorized to find that appellant repeatedly molested his step-daughter, L. H., beginning when she was seven years old. Despite initial requests to stop from both L. H. and appellant's wife, Sheila Hearns, appellant repeatedly engaged in sexual intercourse with L. H. while Hearns was at home and sometimes while Hearns was in the same room. In May 2002, L. H. and her mother discovered that L. H., who was then ten years old, was pregnant. Out of fear that his abuse would be discovered, appellant did not allow L. H. to receive any medical treatment during her pregnancy, withdrew her from school, and forbade her from leaving the house without him, locking her and Hearns in the house with the windows nailed shut. During her pregnancy, appellant forced her to wear tight belts to hide her pregnancy and on numerous occasions punched and stomped on L. H.'s stomach in attempt to induce a miscarriage.

In October 2002, while sitting on the toilet at home, L. H. gave birth to a baby boy with a gestational age of approximately 24 weeks, whom she named Kevin Lamont Hearns. Appellant refused to allow L. H. or the baby to go to the hospital after the birth. L. H.'s mother cared for the baby during the night, but when L. H. awoke, the baby was dead. Appellant took the baby, placed him in a box with a teddy bear and blanket, and dropped the box into nearby McAfee Lake.

---

[1] The crimes occurred over a period of time from March 1, 2002 to October 18, 2002. On June 6, 2005, appellant was indicted by a DeKalb County grand jury on one count of felony murder with the underlying offense of cruelty to children; one count of rape; two counts of aggravated child molestation; one count of aggravated sexual battery; two counts of child molestation; four counts of cruelty to children; and two counts of false imprisonment. Appellant was tried before a jury October 31 through November 10, 2005. In the middle of trial, appellant dismissed his court-appointed attorneys and proceeded with the trial pro se. A verdict of acquittal was directed as to the charges of aggravated child molestation, aggravated sexual battery, and one of the two counts of child molestation. The jury returned guilty verdicts as to all remaining charges except as to one count of false imprisonment. Appellant was sentenced to life imprisonment for felony murder; a consecutive twenty-year term for rape; an additional twenty years concurrent for each of the three counts of cruelty to children and one count of child molestation; and ten years concurrent for false imprisonment. Appellant's motion for new trial, filed December 6, 2005 and amended twice thereafter, was denied on September 14, 2006. A notice of appeal was filed on October 2, 2006. The appeal was docketed on November 30, 2006 and was orally argued on March 12, 2007.

Soon thereafter, L. H. and her mother went to live in Virginia with relatives, in whom L. H. eventually confided about her ordeal, and who thereafter contacted police. In September 2003, investigators searched appellant's house and partially drained the lake; though the baby's body was never recovered, investigators did find various items at appellant's house corroborating details of L. H.'s story, including screws and multiple locks on various windows and doors, pornographic videos, and a police baton with which L. H. witnessed appellant beat her mother.

1. While conceding the sufficiency of the evidence as to most of the charges, appellant contends the evidence was insufficient to prove cruelty to children and, in turn, felony murder predicated on that offense. Count 1 of the indictment charges that appellant, "while in the commission of the offense of cruelty to children as alleged in count eight," caused the death of Kevin Lamont Hearns "by refusing and failing to provide professional medical treatment . . . during . . . and after the birth of said victim." Count 8 similarly states that appellant "maliciously caused cruel and excessive physical pain to Kevin Lamont Hearns . . . by refusing and failing to provide professional medical treatment . . . during . . . and after the birth of said victim." Appellant claims that the evidence is insufficient to support these charged offenses, contending there was "no evidence" (1) that medical attention was denied after the baby's birth; (2) that appellant caused cruel and excessive pain to the baby; or (3) that the baby died due to lack of medical care.

These contentions are without merit. It is undisputed that the failure to seek timely medical care for a child may form the basis for the offense of cruelty to children. *Glenn v. State*, 278 Ga. 291 (1) (a) (602 SE2d 577) (2004). In a videotaped interview with police that was played for the jury, L. H. stated that appellant refused her mother's entreaty to take her and the baby to the hospital after the baby's birth because "[h]e knew that he was gonna get in trouble for what he did." Thus, contrary to appellant's assertion, there was evidence of his explicit refusal to seek medical care for the baby. See OCGA § 24-4-8 (testimony of single witness sufficient to establish a fact). See also *Hill v. State*, 243 Ga. App. 614 (533 SE2d 779) (2000) (evidence sufficient where defendant failed to seek prompt medical treatment for child out of fear of getting in trouble).

Appellant's second and third contentions regarding lack of evidence of pain suffered and causation of death are similarly unfounded. The State's expert, Dr. Lesley Breech, a physician specializing in pediatric and adolescent gynecology and obstetrics, testified that, given the evidence that L. H. was approximately six months pregnant when she gave birth and that the baby was born with its eyes open, it was her opinion that the baby could have been viable and

would thus have benefitted from supportive medical care. L. H. described the baby as looking "purplish blue" when she awoke and discovered him non-responsive, and Dr. Breech testified that respiratory care in particular would have been critical for a baby of that approximate age. The jury thus could reasonably have inferred that, as a result of appellant's refusal to allow the baby to seek medical care, he suffocated to death and, in the process, suffered cruel and excessive pain. See *Folson v. State*, 278 Ga. 690 (1) (606 SE2d 262) (2004) (in making determination regarding cruel and excessive pain, jury may apply generally-accepted societal norms, considering factors such as child's age and extent of the injuries suffered). Though appellant emphasizes that Dr. Breech did not offer a specific opinion on whether the baby suffered pain, it is well established that expert testimony is not required to establish this particular point. *Kennedy v. State*, 277 Ga. 588 (1) (a) (592 SE2d 830) (2004).[2] In addition, while there is no way to definitively ascertain the actual cause of death because the baby's body was never found, there was nevertheless sufficient evidence based on Dr. Breech's testimony to support the jury's finding that, had medical treatment been rendered, the baby might have survived. Thus, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that appellant was guilty of cruelty to children and felony murder predicated thereon. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant next contends that he is entitled to a new trial because the trial court failed to remedy the prejudice caused by appellant's former counsel's improper disclosure of documents protected by the attorney-client privilege and work product doctrine. Though initially represented by the DeKalb County Public Defender's Office, appellant hired a private attorney, Natalee Drummond-Nabors, a few months prior to trial. On the eve of trial, Drummond-Nabors obtained a continuance due to a medical emergency, and shortly thereafter she sought to withdraw as counsel; the trial court granted her request and reappointed the Public Defender's Office. At some point thereafter, appellant's public defenders discovered that Drummond-Nabors had turned over to the prosecution a packet of

---

[2] Though appellant, in his brief, cites an article from the *Journal of the American Medical Association* for the proposition that a fetus is incapable of experiencing pain until a gestational age beyond that at which Kevin was estimated to have been born, this article is not part of the record and thus cannot be considered herein. See *Owens v. State*, 258 Ga. App. 647 (4) (575 SE2d 14) (2002).

documents that included numerous interview summaries of prosecution and defense witnesses, some of which bore margin notes apparently made by appellant, as well as a letter from appellant to Drummond-Nabors discussing various aspects of his case.[3]

As a result, appellant filed a pretrial motion seeking to prevent the State from using any of the information gleaned from these materials at trial. In the course of arguments on the issue, the State agreed, "in an abundance of caution," to return all of the disputed documents to appellant's counsel and not use any of them at trial. The only issue that remained pertained to a summary of an interview with a witness, Erica Fields, of whom the State had had knowledge, but had not yet located, prior to its receipt of the disputed documents; defense counsel sought to bar the State from calling Fields as a witness. The trial court denied this request, due to the State's concessions as to all the other documents as well as the probability that the State would ultimately have located Fields even without the disputed documents. The State called Fields at trial, who testified that she and L. H. were close friends during the time frame when the alleged abuse had occurred and, inter alia, that L. H. had told her at some point that she had had sex but would not say with whom.

Though appellant claims that his defense was impermissibly prejudiced by the disclosure of the disputed documents, it is undisputed that the State returned all of the documents in question to the defense, and there is no allegation or evidence that the State actually used any of the information gleaned from the disputed documents, other than that used to identify Fields.[4] Though appellant claims Fields was an important witness, he fails to specify how her testimony actually undercut his defense[5] and presents nothing to discredit the State's position that it would have located her even without the improper disclosures. Thus, even assuming arguendo that the trial court erred by allowing Fields to testify, there is no "reasonable possibility that the improperly admitted evidence contributed to the conviction." (Citations and punctuation omitted.) *Rowe v. State*, 276 Ga. 800, 804 (2) (582 SE2d 119) (2003).

---

[3] The defense had opted into reciprocal discovery under OCGA § 17-16-1 et seq., and there was some dispute over which materials in this packet were legitimately turned over for this purpose. The State conceded, however, that documents containing appellant's own notes and correspondence with his counsel were not properly the subject of reciprocal discovery. See former OCGA § 17-16-2 (c) (work product and privileged material not subject to reciprocal discovery) (subsequently re-codified at OCGA § 17-16-2 (d), effective July 1, 2005).

[4] Apparently, the only information obtained from the documents was Fields' last name, as her address was blacked out in the documents the prosecution received.

[5] Indeed, as the State points out, her testimony that she inferred that L. H. had had sex with "some boy" could be viewed as potentially supportive of appellant's contention that he did not rape or impregnate L. H.

Further, while appellant claims the improper disclosures required defense counsel to second-guess its entire strategy regarding how to present appellant's case, this argument fails to acknowledge that, aside from the sanctioning of Fields' testimony, the defense got all the relief it sought with respect to the disputed documents. Defense counsel did not ask that the prosecutor be disqualified or seek any further relief beyond preventing the State from using the documents in question. Under these circumstances, we find no error in the trial court's handling of the disputed disclosures. Cf. *Weatherford v. Bursey*, 429 U. S. 545 (II) (97 SC 837, 51 LE2d 30) (1977) (attendance by undercover agent at meetings with defendant and counsel did not violate defendant's right to effective assistance of counsel where agent's privity to confidential communications was invited by defendant and counsel, communications did not reveal defense strategy nor were they used to defendant's substantial detriment, and agent's eventual trial testimony did not involve any information gained at meetings).

3. Appellant next contends that the trial court erred by denying his motion to suppress a pre-arrest statement given by appellant to investigators without the benefit of *Miranda*[6] warnings. The trial court found that appellant was not in custody at the time he gave the statement and thus that no *Miranda* violation had occurred. Appellant contends that the court erred by finding that his statement was non-custodial and allowing it to be read to the jury.

> To determine if an individual is in custody for purposes of *Miranda*, courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a formal arrest. [Cits.] This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave. [Cits.]

*Henley v. State*, 277 Ga. 818, 819-820 (2) (596 SE2d 578) (2004). As revealed at appellant's *Jackson v. Denno*[7] hearing, investigators executing a search warrant for evidence of the crimes at appellant's house requested that appellant accompany them to the police station for questioning. Appellant consented to the investigators' request and was transported to the police station in a regular unmarked vehicle. Appellant was never handcuffed; the door to the interview room was open; and appellant was permitted during the course of the interview

---

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[7] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

to take two bathroom breaks, unaccompanied by police. Though the interview room was accessible only through two locked doors, there was no evidence that appellant could not have left had he so requested. Appellant was never threatened or promised any hope or benefit for his cooperation.

At the conclusion of the interview, one of the investigators offered to drive appellant home after attending to some unrelated matters, and appellant accepted the offer. Appellant was arrested less than an hour after his return home. At the police station, he was read his *Miranda* rights, at which time he remarked, "I wasn't advised of this earlier because I wasn't under arrest, right?"

Based on these facts, we agree with the trial court that appellant was not in custody at the time of the challenged statement; thus, *Miranda* warnings were unnecessary and appellant's statement was properly admitted. That police may have had probable cause to arrest appellant at the time of the interview is not determinative of whether he was in custody. See *Heckman v. State*, 276 Ga. 141 (1) (576 SE2d 834) (2003) (fact that person was "prime suspect" not conclusive on whether interrogation was custodial). The relevant inquiry is not whether the investigators believed appellant to be a suspect but rather, as stated above, whether a reasonable person in appellant's position would have believed his freedom was restrained. *Quedens v. State*, 280 Ga. 355 (2) (629 SE2d 197) (2006); *Henley*, supra, 277 Ga. at 819 (2). Cf. *McDougal v. State*, 277 Ga. 493 (1) (A) (591 SE2d 788) (2004) (defendant was in custody at time of interview where detectives alluded several times to fact that defendant could be arrested based on evidence already obtained and where defendant was prohibited from leaving interview for previously scheduled appointment).

We find no merit in appellant's contention that the procedure followed by police here was comparable to the "question-first" technique condemned by the U. S. Supreme Court in *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601, 159 LE2d 643) (2004) (plurality opinion) (*Mirandized* confession following un-*Mirandized* confession inadmissible, where both statements given post-arrest). Indeed, "[t]he circumstances in this case are very different [from those in *Seibert*]. At the time [appellant] made his first statement, he was not under arrest and not subject to custodial interrogation." *Wiggins v. State*, 280 Ga. 627, 629 (2) (a) (632 SE2d 80) (2006).

4. Appellant contends, and the State concedes, that the trial court erred by sentencing him on both felony murder (Count 1) and its underlying felony (Count 8). *Hawkins v. State*, 267 Ga. 124 (2) (475 SE2d 625) (1996) (conviction and sentence for underlying felony

merge with conviction and sentence for felony murder). Accordingly, the conviction and sentence as to Count 8 of the indictment must be vacated.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED JUNE 25, 2007.

*Adam M. Hames*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.