S12A1582. REAVES v. THE STATE.
(740 SE2d 141)

BLACKWELL, Justice.

Charlott Lynett Reaves was tried by a Henry County judge and convicted of the murder of her stepdaughter. Reaves appeals, contending only that the trial court erred when it denied in part her motion to suppress certain statements that she made to a law enforcement officer. We see no error and affirm.[1]

---

[1] The events that form the basis for the conviction occurred between November 21, 2003 and December 1, 2003. Reaves was indicted on February 19, 2004 and charged with malice murder, felony murder in the commission of cruelty to children in the first degree, felony murder in the commission of aggravated battery, cruelty to children in the first degree, and aggravated battery. The State gave notice of its intent to seek the death penalty, and this Court undertook interim review of certain issues unrelated to those raised in this appeal. See *Reaves v. State*, 284 Ga. 236 (664 SE2d 207) (2008). Following interim review, Reaves and the State entered into an agreement, whereby Reaves waived her right to trial by jury, and the State agreed to recommend a sentence of life without parole if Reaves were convicted. A bench trial commenced on April 28, 2009, and on May 4, 2009, the trial court acquitted Reaves of malice murder and found her guilty on the remaining counts. Reaves was sentenced to imprisonment for life for felony murder, the trial court correctly sentencing Reaves on only one count of felony murder. *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). The trial court merged both predicate offenses — cruelty to children in the first degree and aggravated battery — with the felony murder, although it was only necessary to merge the offense that formed the predicate for the felony murder count on which Reaves was sentenced, and the trial court might properly have convicted and sentenced Reaves for the other underlying offense. *Mangrum v. State*, 285 Ga. 676, 683 (11) (681 SE2d 130) (2009). Reaves understandably raises no claim of error about the failure of the trial court to impose sentence on one of the two predicate offenses. See *Dunn v. State*, 263 Ga. 343, 345 (2) (434 SE2d 60) (1993). Reaves filed a motion for new trial

1. Construed in the light most favorable to the finding of guilt, the evidence shows that law enforcement officers responded to the home that Reaves shared with her husband, Rodney, and his 11-year-old daughter, Joella, where the officers found Joella dead in her bedroom.[2] Joella had abrasions, bruises, lacerations, and puncture wounds across her body, including a blackened eye and a cut to her head. In addition, the knuckles were missing from one of her hands, and skin was missing from one of her buttocks. According to the medical examiner, Joella died of trauma to almost every area of her body, most of which was not self-inflicted, which resulted in kidney and heart failure. The medical examiner opined at trial that some injuries to Joella were consistent with her having had contact with certain items found in the home, including electrical wire and an umbrella.

Rodney told the officers that Joella had behavioral problems and had tried to hurt herself. Rodney explained that he and Reaves had put Joella into the garage for a "timeout," had "hogtied" her with speaker wire, and had spanked her with a paddle. Unaware of these statements by Rodney, Sergeant Joseph Smith went to the hospital at which Reaves worked, and she agreed to accompany Sergeant Smith to the police station. There, Reaves herself made several incriminating statements. Among other things, Reaves admitted that she had helped Rodney tie up Joella, that she had paddled Joella in the previous week, and that she had witnessed physical altercations between Rodney and Joella. Although Reaves does not dispute that the evidence is sufficient to sustain her conviction, we have independently reviewed the evidence, and we conclude that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Reaves was guilty of the murder of Joella. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). See also *Henley v. State*, 277 Ga. 818, 819 (1) (596 SE2d 578) (2004), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008).

2. In her motion to suppress, Reaves sought to suppress the statements that she made to Sergeant Smith, contending that some of the statements were made before she was advised of her *Miranda*[3] rights, and the others were made after she was advised of her rights and had invoked her right to counsel. The trial court granted the

---

on May 29, 2009, which she amended on October 13, 2010. The trial court denied the motion for new trial on June 17, 2011. Reaves timely filed her notice of appeal on July 7, 2011, and the case was docketed in this Court for the September 2012 term and argued on September 17, 2012.

[2] Rodney was separately indicted for, tried for, and convicted of the murder of Joella. We recently affirmed his conviction. See *Reaves v. State*, 292 Ga. 545 (739 SE2d 368) (2013).

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

motion in part and denied it in part. After a hearing, the trial court found that the interview of Reaves was not a custodial interview at the outset, but it became custodial during the course of the interview, and the court denied the motion as to statements made before the interview became custodial. The trial court also found that Reaves was advised of her rights around the time the interview became custodial, but she did not unequivocally invoke her right to counsel until much later. Accordingly, the trial court also denied the motion as to statements made between the time *Miranda* warnings were given and her unequivocal invocation of her right to counsel. The trial court granted the motion as to statements made following her invocation of the right to counsel. On appeal, Reaves contends that the trial court should have suppressed all the statements that she made to Sergeant Smith.

(a) *Miranda* warnings are required only when a person is interviewed by law enforcement while in custody. *Phillips v. State*, 285 Ga. 213, 215 (2) (675 SE2d 1) (2009). For purposes of *Miranda*, a person is considered to be in custody if she has been formally arrested or if her freedom of movement has been restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U. S. 318, 322 (II) (114 SC 1526, 128 LE2d 293) (1994); *Henley*, 277 Ga. at 819-820 (2). An assessment of whether a person was in custody at the time of an interview "involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave." *Vaughn v. State*, 282 Ga. 99, 102 (4) (646 SE2d 212) (2007) (citation and punctuation omitted). "Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required." *Henley*, 277 Ga. at 818 (2) (citation and punctuation omitted). "On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous and independently apply the legal principles to the facts." *Green v. State*, 291 Ga. 287, 291 (4) (728 SE2d 668) (2012) (citation and punctuation omitted).

In this case, the evidence supports the findings of the trial court that Reaves voluntarily agreed to ride with Sergeant Smith to the police station, that she rode in the front seat of an unmarked patrol car, that she was not handcuffed, and that she was not formally arrested. When they arrived at the police station around 11:00 a.m., Sergeant Smith, who then was unaware that Rodney had implicated Reaves, asked Reaves to write a statement about the victim's medical condition and related events. No one was in the room with her, the door to the room was left open, she could move about freely, and she

had full access to a restroom and refreshments. Sergeant Smith later returned to the room at 12:24 p.m., talked with Reaves, and reviewed her statement with her. Later, around 2:15 p.m., Sergeant Smith was informed by another officer that Reaves might be suspected of criminal wrongdoing, and Sergeant Smith read the *Miranda* warnings to Reaves.

Prior to that time, it appears that Sergeant Smith had little reason to suspect that Reaves was involved in the death of the victim. *Sewell v. State*, 283 Ga. 558, 561 (2) (662 SE2d 537) (2008); *Henley*, 277 Ga. at 820 (2). But even if he did suspect her involvement, that fact would not mean that Reaves was in police custody, as "[w]hether a police officer focused his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes." *Sewell*, 283 Ga. at 561 (2) (citation omitted). Considering all the circumstances as found by the trial court, we conclude that a reasonable person in Reaves's position would not have perceived herself to be in custody before Sergeant Smith read the *Miranda* warnings and instead would have felt at liberty to end the questioning and leave. Id. at 562 (2); *Henley*, 277 Ga. at 820 (2). Consequently, the trial court did not err when it admitted Reaves's pre-*Miranda* statements. Id.

(b) Reaves also contends that the trial court should have excluded all of her post-*Miranda* statements because they were made after she invoked her right to counsel.[4] In *Edwards v. Arizona*, 451 U. S. 477, 484-485 (II) (101 SC 1880, 68 LE2d 378) (1981), the United States Supreme Court decided that a suspect who asks for a lawyer at any time during a custodial interrogation may not be further questioned by law enforcement until a lawyer has been made available, unless the suspect herself reinitiates the conversation. See also *Wheeler v. State*, 289 Ga. 537, 538 (713 SE2d 393) (2011). "If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the State's case-in-chief."[5] Id. at 538-539 (citation and punctuation omitted). See also *Edwards*, 451 U. S. at 487 (II). To properly invoke her right to counsel during a custodial interrogation, a suspect "must articulate h[er] desire to have counsel present sufficiently clearly

---

[4] Although Reaves argues only her right to counsel as protected under *Miranda* and the Fifth Amendment, she does mention her Sixth Amendment right to counsel. But because "no adversarial proceedings had yet been initiated [at the time of her interview], no Sixth Amendment concerns had yet come into play." *Beck v. State*, 235 Ga. App. 707, 709 (2) (510 SE2d 368) (1998) (citations omitted).

[5] Such statements may be admissible, however, to impeach the defendant's testimony. See *Taylor v. State*, 274 Ga. 269, 272 (1), n. 3 (553 SE2d 598) (2001).

that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U. S. 452, 459 (II) (114 SC 2350, 129 LE2d 362) (1994). See also *Wheeler*, 289 Ga. at 539. Because Reaves's pretrial statements were "videotaped and there are no relevant additional facts, the trial court's application of the law to the undisputed facts is subject to de novo appellate review." *Taylor*, 274 Ga. at 272 (1) (footnote omitted). See also *Wheeler*, 289 Ga. at 538.

Reaves argues that just before and after she was informed of her rights, she asked about a lawyer on ten occasions, and three of her requests for a lawyer, she says, were unambiguous. The number of times that a suspect refers to a lawyer is not controlling. "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Dinkins v. State*, 894 SW2d 330, 351 (IX) (Tex. Crim. App. 1995) (citations omitted). See also *Collins v. State*, 727 SW2d 565, 568 (Tex. Crim. App. 1987) ("Certainly, no magic words must be stated. But, neither is the mention of 'lawyer' a talisman for invocation."). Accordingly, we turn now to consider each of the three occasions on which, Reaves contends, she unequivocally asked for a lawyer.

On the first occasion, Sergeant Smith told Reaves that he was going to inform her of her *Miranda* rights, and Reaves asked: "Maybe I will need my lawyer?[6] . . . Is that what you're telling me?" When Sergeant Smith asked, "What?," Reaves answered, "That I need to have me a lawyer." Reaves claims that this answer was an unequivocal request for counsel. In context, however, it was not such a request, but rather, it was a statement clarifying and completing Reaves's earlier question about whether Sergeant Smith was telling her that she needed to have a lawyer. "The comments on which [Reaves] relies [must be] viewed in context . . . ." *Brooks v. State*, 271 Ga. 698, 699 (2) (a) (523 SE2d 866) (1999).

The second reference to a lawyer that Reaves claims to be an unambiguous request for counsel is her question: "When will I have to come back with a lawyer?"[7] Sergeant Smith then asked, "What's that?," and Reaves again asked "When do I have to come back with a

---

[6] This particular question, like several other references by Reaves to a lawyer, is very similar to the statement "Maybe I should talk to a lawyer," which the United States Supreme Court has said is ambiguous and not a clear request for counsel that requires the termination of questioning. *Davis*, 512 U. S. at 462 (II). See also *Taylor*, 274 Ga. at 272 (1).

[7] Reaves relies on a transcript of this exchange indicating that she said, "Well we're going to have to come back with a lawyer." (Vol. 10 T. p. 501) But a review of the video recording itself shows that the transcript is in error at that point.

lawyer?" Reaves's inquiry as to "when" she would "have to" return with a lawyer was not an unambiguous request for counsel. See *Carroll v. State*, 275 Ga. 160, 161 (2) (563 SE2d 125) (2002). Even a comment that a suspect would like counsel to be present in the future is not a clear and unambiguous request for counsel. *Luallen v. State*, 266 Ga. 174, 178 (4) (465 SE2d 672) (1996), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999); *Johnson v. State*, 289 Ga. App. 41, 43 (656 SE2d 200) (2007). See also 2 Wayne R. LaFave et al., Criminal Procedure § 6.9 (g) (3d ed.) ("An indication by the defendant that he will only want counsel at some future time or for some other purpose is not an assertion of the right to counsel for *Miranda* purposes . . . ."). At most, Reaves's question as to when she would have to come back with a lawyer was referring to "the future assistance of an attorney, not immediate assistance." *Willis v. State*, 287 Ga. 703, 705 (2) (699 SE2d 1) (2010) (footnote omitted).

On the third occasion when Reaves claims she unambiguously requested counsel, she said, "I would still feel more comfortable with a lawyer." Sergeant Smith responded, "Okay. So you don't want to talk to me right now?," and Reaves answered, "not unless I can exercise my rights any time . . . during the conversation." Sergeant Smith immediately reassured her that "[y]ou can do that. . . . It's your right, ma'am." The meaning of Reaves's statement that she would "feel more comfortable" with a lawyer is very similar to the statement "I prefer a lawyer," which has been considered "only an ambiguous mention of possibly speaking with an attorney" and "insufficient to invoke the right to counsel." *Delashmit v. State*, 991 S2d 1215, 1221 (I) (Miss. 2008). A reasonable police officer would not understand the third statement on which Reaves relies to be an unequivocal assertion of the right to counsel. Id.

A close examination of Reaves's references to a lawyer shows a "pattern of equivocation" on her part, including the use of "hedge" words and phrases like "maybe" and "feel more comfortable," such "that a reasonable officer would have understood only that [she] *might* want an attorney present, not that [s]he was clearly invoking [her] right to deal with the officer[ ] only through counsel." *United States v. Hampton*, 675 F3d 720, 727 (II) (A) (7th Cir. 2012) (citations omitted; emphasis in original). Under these circumstances, Reaves's post-*Miranda* statements, other than those which were made after she unequivocally invoked her right to counsel late in the interview and which were excluded by the trial court, were admissible against her, and the trial court did not err in denying in part her motion to exclude her pretrial statements. See *Willis*, 287 Ga. at 705 (1).

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in Divisions 1 and 2 (a) and in the judgment.*

DECIDED MARCH 18, 2013.

*Hogue & Hogue, Franklin J. Hogue,* for appellant.

*Tommy K. Floyd, District Attorney, James L. Wright III, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General,* for appellee.