300 Ga. 442
FINAL COPY

S16A1524. UPSHAW v. THE STATE.

BLACKWELL, Justice.

Jerome Upshaw was tried by a Muscogee County jury, and he was convicted of murder and unlawful possession of a firearm during the commission of a felony in connection with the fatal shooting of Joanne Walton. Upshaw appeals, contending that the trial court erred when it limited his cross-examination of one prosecution witness, when it refused to grant a mistrial after another prosecution witness refused to be cross-examined, and when it excepted the lead detective from the rule of sequestration. Upon our review of the record and briefs, we note that the trial court erroneously sentenced Upshaw for both malice murder and felony murder, and we vacate the conviction and sentence for felony murder. We see no other error, however, and we otherwise affirm the judgment below.[1]

---

[1] Walton was killed on December 7, 1996. The homicide was unsolved for several years, and it was reopened as a cold case in 2007. On December 20, 2011, a Muscogee County grand jury indicted Upshaw and charged him with malice murder, felony murder,

1. Viewed in the light most favorable to the verdict, the evidence shows that on the night of December 7, 1996, Upshaw met Walton at a gas station in Columbus. Walton agreed to provide sexual services to Upshaw in exchange for drugs, and she got into a car with Upshaw, Corey Franks, and Tim Turman. Franks, who was the driver of the car, heard Upshaw arguing with Walton in the back seat. Upshaw then asked Franks to pull over to the side of the road, Upshaw and Walton got out of the car, and Upshaw shot Walton in the head with a .38 caliber Taurus revolver. When Upshaw returned to the car, he asked his friends if they were still going to a nightclub, and he threatened Franks about what would happen to his family if he told anyone what he had seen. Walton's

---

aggravated assault, unlawful possession of a firearm by a convicted felon, and unlawful possession of a firearm during the commission of a felony. The charge of unlawful possession of a firearm by a convicted felon later was dismissed by nolle prosequi. Upshaw's trial began on August 27, 2012, and the jury returned its verdict on August 31, finding Upshaw guilty on all counts. On September 5, 2012, Upshaw was sentenced to imprisonment for life for malice murder and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The trial court should have found that the felony murder was vacated by operation of law and that the aggravated assault merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Instead, as discussed in Division 1, infra, the trial court erroneously sentenced Upshaw to a concurrent term of imprisonment for life for felony murder, and it found that the aggravated assault merged into the felony murder. Upshaw timely filed a motion for new trial on September 14, 2012, and he amended it on September 18, 2015. The trial court denied his motion on February 3, 2016, and Upshaw timely filed a notice of appeal on March 4, 2016. His appeal was docketed in this Court for the September 2016 term and submitted for decision on the briefs.

body was found later that night on the side of the road. Upshaw hid the revolver in his mother's house, but it was eventually found — and sold — by Upshaw's mother and her boyfriend. Soon after the sale, the revolver was recovered by police, determined to be the firearm used in Walton's murder, and traced back to Upshaw.

Upshaw does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Upshaw was guilty of malice murder and unlawful possession of a firearm during the commission of a felony. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). And while the jury was authorized to find Upshaw guilty of felony murder as well, he cannot be convicted and sentenced for both malice murder and felony murder because there was only one killing. As a result, the judgment

3

of conviction for felony murder must be vacated as surplusage. See <u>Hendrix v. State</u>, 298 Ga. 60, 67 (4) (779 SE2d 322) (2015).[2]

2. Franks was called by the State to testify, and Upshaw sought to impeach Franks by asking him about the circumstances that led to his prior arrest (and conviction) for aggravated assault. The trial court sustained the State's objection to this line of questioning, a ruling that Upshaw now asserts was error. While Upshaw was entitled to "thorough and sifting cross-examination" of the State's witnesses, a witness may be cross-examined "only as to relevant matter." Former OCGA §§ 24-9-62 and 24-9-64.[3] And where, as here, a defendant seeks to impeach a witness with a prior conviction, "the specific facts underlying the crime are irrelevant unless the witness

---

[2] In addition, the trial court purported to merge the aggravated assault into the felony murder when it should have merged the aggravated assault into the malice murder. But Upshaw was not harmed by this error, and there is no reason to remand this case to the trial court. See <u>Malcolm v. State</u>, 263 Ga. at 374 (5) (aggravated assault merged with malice murder where, as here, assault and murder were both based on a single shooting of the victim). Compare <u>White v. State</u>, 297 Ga. 218, 221 (4) (773 SE2d 219) (2015) (aggravated assault did not merge with malice murder where the assault and killing were separated by a deliberate interval).

[3] Because Upshaw's case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101. We note that these portions of former OCGA §§ 24-9-62 and 24-9-64 have been carried forward into the new Evidence Code, where they are codified at OCGA § 24-6-611 (b).

4

attempts to rehabilitate himself by explaining the circumstances of his conviction." Brown v. State, 276 Ga. 192, 193 (3) (576 SE2d 870) (2003) (citations and punctuation omitted). Here, Franks explained that he was on parole for aggravated assault, and he made no effort to rehabilitate himself by explaining the circumstances that led to his conviction. As a result, the trial court did not err when it prevented Upshaw from interrogating Franks about the specific facts of that offense.

3. Upshaw also contends that the trial court erred when it refused to grant a mistrial after another prosecution witness — a man named Mark Price — refused to be cross-examined. The State had referred to this witness in its opening statement, saying that the evidence would show that Upshaw made "a confession" to Price. Later, the boyfriend of Upshaw's mother testified and made a vague reference to a jailhouse statement made by Price that involved Walton's murder (although he did not describe what was said), and a police detective testified that Upshaw "supposedly" told Price about the murder. When Price was called as a witness by the State, he did not testify that Upshaw confessed to him, but he admitted that he made a jailhouse statement to the police in 2008. The contents of the statement were not entered into evidence,

and Price distanced himself from the statement, claiming that a detective told him to sign off on the statement or the detective would "see to it that [he] never g[o]t out of [the] chain gang." But when the State asked Price about his prior convictions, he invoked his right to remain silent and provided no additional testimony on direct examination. Price refused to answer any questions at all on cross-examination.

In response to Price's silence, Upshaw requested a mistrial, which was denied by the trial court. He also requested that Price be held in contempt, and the trial court granted that request. The trial court then instructed the jury that it should "disregard any statements that may have been made by any witness concerning a statement by [Upshaw] to . . . Price." The trial court also offered to instruct the jury to disregard Price's testimony in its entirety, but Upshaw declined the offer.

Upshaw now asserts that his Sixth Amendment right to confrontation was violated when the trial court refused to grant his motion for mistrial. But "when a witness declines to answer on cross examination certain pertinent questions relevant to a matter testified about by the witness on direct examination," the trial court may be able to cure this inequity by striking "all of the witness'

6

testimony on the same subject matter." Soto v. State, 285 Ga. 367, 368-369 (2) (677 SE2d 95) (2009) (citation, punctuation and emphasis omitted). Here, Upshaw declined the court's offer to strike Price's testimony, likely because the little testimony that Price gave was favorable to him. And the trial court acted within its discretion when it provided a curative instruction for the jury to disregard any testimony about a statement made by Upshaw to Price. See Miller v. State, 289 Ga. 854, 860 (4) (717 SE2d 179) (2011) ("[w]hether a trial court grants a defendant's motion for mistrial or uses a curative jury instruction to correct improper evidence that comes before a jury is a matter of judicial discretion"). No mistrial was required.

4. Finally, Upshaw claims that the trial court erred when it excepted the lead detective from the rule of sequestration so that he could assist the prosecution with the orderly presentation of evidence. But as Upshaw acknowledges, it is well established that a trial court does not abuse its discretion when it permits a witness to remain in the courtroom to assist the prosecution with the orderly presentation of evidence. See Moore v. State, 297 Ga. 773, 774 (2) (778 SE2d 210) (2015) ("in the situation in which the State maintains that it needs the presence of the primary investigator for the orderly

7

presentation of the case, excepting the investigator from the rule of sequestration is within the discretion of the trial court") (citation and punctuation omitted). Here, the presence of the lead detective was especially important because of the large number of witnesses that he had personally interviewed and the length of time between the murder (in 1996) and the trial (in 2012). This enumeration of error has no merit.

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided January 23, 2017.

Murder. Muscogee Superior Court. Before Judge McBride.

William L. Kirby III, for appellant.

Julia F. Slater, District Attorney, Wesley A. Lambertus, Robert B. Bickerstaff, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.