306 Ga. 663
FINAL COPY

S19A0661.  LEE v. THE STATE.

BLACKWELL, Justice.

Anthony Lee was tried by a Columbia County jury and convicted of the murder of Dexter Butts and possession of a firearm during the commission of a crime. Lee appeals, contending that the State failed to present evidence legally sufficient to sustain his convictions, that he was denied the effective assistance of counsel at trial, that the trial court erred when it admitted a statement that he gave to investigators, and that the trial court erred when it allowed the prosecution to impeach a defense witness with a pending indictment. Upon our review of the record and briefs, we find no merit in these claims of error, and we affirm.[1]

---

[1] Butts was killed on January 3, 2005. A grand jury indicted Lee in March 2005, charging him with murder with malice aforethought, murder in the commission of an aggravated assault, and possession of a firearm during the commission of a crime. Lee was tried in May 2006, and the jury found him guilty of felony murder and possession of a firearm during the commission of a crime. The trial court sentenced Lee to imprisonment for life for the murder and a consecutive term of imprisonment for five years for the firearm possession. Lee timely filed a motion for new trial, which the trial court denied

1. Viewed in the light most favorable to the verdict, the evidence shows that on January 3, 2005, Butts was visiting the home of Keisha Davis in Harlem, Georgia. There, Butts received a phone call from Lee, and in the course of their conversation, Lee claimed that Butts owed him money. Butts denied owing Lee anything but told him that, if he thought Butts had his money, he should "come and get it." A short time later, Lee and Carlos Lewis arrived at and entered Davis's home. Lee confronted Butts as he sat at the kitchen table with Davis, her four-month-old child, and her mother. Lewis stood in the living room. Lee and Butts briefly argued, and Butts then asked Lee something along these lines:

in August 2008. Lee then timely filed a notice of appeal. Although the reasons for the delay are not entirely clear, the appeal was not docketed in this Court until August 2016. At that time, after new appellate counsel was appointed to represent Lee, he moved to remand the case to the trial court so that he could raise a claim that he was denied the effective assistance of counsel at trial. We granted the motion to remand in September 2016. On remand, Lee filed a second motion for new trial, which he thereafter amended twice. The trial court held a hearing on the motion for new trial in January 2018 and later denied his motion in October 2018. Lee then timely filed a second notice of appeal, and his appeal was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

"What are you going to do, shoot me?"[2] Butts started to get up from the table and move toward Lee when Lee pulled a handgun and shot Butts in the lower abdomen. According to Lee and Lewis, Lee shot Butts as he was moving toward him from behind the table. According to Davis and her mother, Lee shot Butts before he completely stood up. Butts died as a result of the gunshot wound. Lee and Lewis fled the house.

Lee argues that the evidence is insufficient to sustain his convictions because the State failed to present adequate evidence that he was not acting in self-defense. But as we have explained time and again, "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted). Here, the State's evidence showed that Lee shot Butts as he was standing

---

[2] Different witnesses gave slightly different accounts of the words that Butts used, but the witnesses seemed to agree that he said something along these lines.

up from a table. Although Lee presented contrary evidence of self-defense, the jury was free to disbelieve his evidence and to credit the State's evidence instead. See id.; Wright v. State, 296 Ga. 276, 284 (3) (766 SE2d 439) (2014) ("It is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court."). Thus, the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Lee was guilty of felony murder and possession of a firearm during the commission of a crime. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Next, Lee contends that he was denied the effective assistance of counsel when his trial lawyer failed to object or request curative instructions after a witness testified inaccurately about the law of self-defense. On cross-examination, the lawyer asked Investigator Brian Jones, the lead investigator on the case, "And you believe that if you're armed and I come at you, that you just have to sit there and get your . . . a** kicked?" The following exchange then took place:

4

INVESTIGATOR JONES: And this was alluded to yesterday about police officer versus civilian. As a police officer, no I don't believe I have the — or would want to just stand there and get my a** whipped. But then again as a police officer I am mandated by the State of Georgia and mandated by the sheriff of this county to go into certain situations and I don't have control over them because I took an oath to protect the citizens of the county of Columbia and anybody inside that county to the best of my abilities. I'm mandated to do that. That is, I am supposed to do that. Mr. Lee, on the other hand, as a civilian, yes, he does have the lawful authority if he doesn't have anything preventing him from carrying a firearm he can carry a firearm. But he is not mandated to go anywhere. He is not made to go in any situation where he feels like he could get his a** whipped or get the gun taken away from him. So the correlation between a police officer and civilian is kind of like comparing apples and oranges when you think about it in that respect. So if that is an answer to your question, then that would be the answer that I could give you.

DEFENSE COUNSEL: Are we the oranges and you're the apple? We don't have the same rights to self-defense that you have?

INVESTIGATOR JONES: No sir, I didn't say that. You have the right to self-defense but you have a duty to first look out for yourself and not put yourself in a position to have to use self-defense.

Trial counsel did not object to this testimony. Lee now argues that

Investigator Jones misstated the law of self-defense and that his

lawyer's failure to object or request a curative instruction prejudiced him because the jury was presented with an incorrect statement of applicable law.

At the motion for a new trial hearing, trial counsel said that he understood Investigator Jones to have given less than a complete and accurate explanation of the law of self-defense.[3] He added, however, that he made a strategic decision to not challenge the testimony at that time because the misstatement of law was only "one or two lines," a contemporaneous objection might draw more attention to it, and he would have an opportunity in closing argument to rebut it. Trial counsel thought that closing argument and the jury charge on self-defense would be enough to cure any misperception about the law of self-defense that the jury might have had as a result of Investigator Jones's testimony.

To prevail on a claim of ineffective assistance, Lee must prove both that the performance of his lawyer was deficient and that he

---

[3] It was, in fact, wrong. There is no legal duty for non-police to avoid all situations in which self-defense might be necessary.

was prejudiced by this deficient performance. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Lee must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Lee must show "a reasonable probability that, but for [his lawyer's] unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Lee has failed to carry it.

Assuming without deciding that Lee's counsel was deficient for failing to object to Investigator Jones's testimony about self-defense, Lee has not shown that he was prejudiced as a result. To the extent

7

that the testimony was an incomplete or inaccurate statement of the law of self-defense, any error was cured by trial counsel addressing the law of self-defense in his closing argument and even more so by the trial court correctly charging the jury on self-defense.[4] Moreover, at the beginning of its jury instructions, the trial court clarified that *the court* had the "duty and responsibility to determine the law that applies to this case and to instruct you on that law," clearly signaling to the jury that it was not to take the applicable law from witnesses. Having been accurately and fully charged on the law of self-defense, the jury was free to accept or reject the evidence that the attack was not done in self-defense. As no prejudice has been shown, Lee has failed to prove that he was denied the effective assistance of counsel in connection with the testimony of Investigator Jones.

3. Lee argues that the trial court erred when it admitted his custodial statement based on its finding that his request for counsel

---

[4] Closing arguments were not transcribed, but at the hearing on the motion for new trial, trial counsel testified that he, in fact, clarified the law of self-defense in closing argument. The trial court credited that testimony, and we defer to that credibility determination.

was ambiguous. The day after the shooting, Lee turned himself in to law enforcement officers. After he was arrested, Lee was interviewed by two officers. At the beginning of the interview, one officer read Lee his Miranda[5] warnings, and Lee also read a waiver-of-rights form aloud. The following exchange then took place:

> OFFICER: Knowing these rights, are you willing to talk to me about what happened?
> LEE: [Inaudible.] It ain't gonna be too much different from when my lawyer get here. But you know, yeah, you know what I'm saying, yeah, I shot him or whatever.
> OFFICER: Well if you want to talk to me, what I want you to do is sign right here saying you read this and you want to talk to me.
> LEE: [Inaudible.] I wanted to wait on my lawyer, but I'll go ahead and —
> OFFICER: Now you don't do nothing that you don't want to do. I'm not trying to make you do anything.
> LEE: Well I ain't really picked my lawyer out, but I know within a few days, I should have one.
> OFFICER: Mmm ok. It's up to you. If you want to talk to me, you can sign that and talk to me. If you don't, we'll call it. Whatever you want to do. I can't make you do it. That's what this whole point right here is.
>
> LEE: Can I just wait until I get a lawyer?
> OFFICER: You can do whatever you want to do.
> LEE: Because you know what I mean, then I can —

---

[5] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

OFFICER: And I don't want to mix your words or whatever. But you said you wanted to talk with me [inaudible]

LEE: I'll talk to you. You know what I'm saying. I'll go ahead and tell you.

OFFICER: Ok. If you want to talk to me, just sign right there saying you want to talk to me. I don't want to try to mix your words up. Ok. So having signed here, you're willing to go ahead and talk to me without your lawyer. Is that what you're saying?

LEE: Yeah, I'll go on and talk.

Lee then signed the waiver form and gave a statement to the officer, in which he claimed that he shot Butts in self-defense. Lee argues that the officers never should have taken his statement because, before he gave it, he unequivocally invoked his right to counsel. We disagree.

"A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation." McDougal v. State, 277 Ga. 493, 498 (1) (B) (591 SE2d 788) (2004) (citation and punctuation omitted). See also Edwards v. Arizona, 451 U. S. 477, 484-485 (II) (101 SCt 1880, 68 LEd2d 378) (1981). An ambiguous or equivocal

10

statement about an attorney does not require officers to cease interrogation, however; a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U. S. 452, 459 (II) (114 SCt 2350, 129 LE2d 362) (1994). See also McDougal, 277 Ga. at 499 (1) (B).

In this case, Lee's numerous references to counsel—including "It ain't gonna be too much different from when my lawyer get here," "I wanted to wait for my lawyer but I'll go ahead," "Well I hadn't really picked my lawyer out, but I know within a few days, I should have one," and "Can I just wait until I get a lawyer?"—were not unequivocal and unambiguous requests to have counsel present during interrogation. Moreover, Lee twice indicated an intention to obtain counsel in the future, but future-oriented references to obtaining counsel are not clear requests for an attorney that require law enforcement officers to immediately end an interview. See, e.g., Kirby v. State, 304 Ga. 472, 475-476 (2) (a) (819 SE2d 468) (2018)

11

(finding that appellant's statement "I'm going to go ahead and get a lawyer" was not an unequivocal and unambiguous request to have counsel because it was a future-oriented reference to obtaining counsel); Reaves v. State, 292 Ga. 582, 586-587 (2) (B) (740 SE2d 141) (2013) (holding that the defendant asking, "When will I have to come back with a lawyer?" referred to a future intention to seek counsel and was not an unequivocal request for counsel).

When a defendant makes an equivocal reference to counsel, as Lee did here, interviewing officers are not always required to clarify the request, but they can. See Davis, 512 U. S. at 461-462 (II). Throughout the exchange quoted above, Lee made equivocal and ambiguous statements about his intent to obtain an attorney, and each time the officer reasonably sought clarification of Lee's statements. Ultimately, Lee stated, "I'll talk to you. You know what I'm saying. I'll go ahead and tell you." Because Lee did not unambiguously invoke his right to counsel during the custodial interview, the trial court did not err in admitting its recording into evidence.

4. Finally, Lee argues that the trial court erred when the State was permitted to impeach a defense witness with a pending indictment. Lee called Lewis to testify at trial, and on cross-examination, the State asked if Lewis currently was under indictment for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. Lewis admitted that he was, and Lee then moved for a mistrial, arguing that a witness can only be impeached on the basis of a conviction, not an indictment. The court denied the motion for a mistrial, finding that the State introduced the evidence not to generally impeach the witness on the ground that he was a criminal and ought not be believed, but instead to impeach the witness on the ground that he was biased against the State because he was then being prosecuted by the same district attorney's office. The court did, however, give a limiting instruction to the jury, advising the jurors that they could only consider the testimony to show Lewis's bias against the State. Lee now claims that the denial of his motion for mistrial was error.

Whether to grant a mistrial is committed to the discretion of

13

the trial court, and the denial of a motion for mistrial will not be disturbed on appeal unless there is a showing that a mistrial was essential to preserve the defendant's right to a fair trial. Jordan v. State, 305 Ga. 12, 15 (2) (823 SE2d 336) (2019). Furthermore, a trial court acts within its discretion when it provides adequate curative instructions to the jury to cure any prejudice stemming from the introduction of improper evidence. Upshaw v. State, 300 Ga. 442, 445 (3) (796 SE2d 287) (2017).

Here, the trial court did not abuse its discretion by allowing the prosecution to cross-examine Lewis regarding his pending indictment for the limited purpose of showing his bias. We have held that a defendant may cross-examine a prosecution witness about pending criminal charges to show that the witness has reason to shade his testimony in favor of the State. See Smith v. State, 276 Ga. 263, 264 (2) (577 SE2d 548) (2003). We see no reason why charges pending against a witness and brought by the same office of prosecuting attorneys cannot also be used to suggest that a defense witness has reason to be hostile to the State. Which inference to

draw—whether the pending charges give the witness reason to curry favor with the State or instead give him reason to try to wound the State by shading his testimony—is for the jury to decide. The trial court did not err when it allowed the prosecution to use pending charges to impeach Lewis on grounds of bias, especially where (as here) the trial court was careful to issue a limiting instruction so that the jury considered the evidence *only* for that purpose. See Byrum v. State, 282 Ga. 608, 613 (10) (652 SE2d 557) (2007) (stating, in the context of prosecutorial misconduct, that a new trial will not be granted unless it is clear that the trial court's curative actions failed to eliminate the improper argument from consideration by the jury). The denial of the motion for mistrial was not error.

Judgment affirmed. All the Justices concur.

DECIDED SEPTEMBER 3, 2019.
Murder. Columbia Superior Court. Before Judge Brown.
*Lucy D. Roth, Katherine M. Mason*, for appellant.

15

*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.